SARIC, Appellant, vs. BRLOS and others, Defendants: CHERRY and wife, Respondents.

*September 10—October 16, 1945.*

For the appellant the cause was submitted on the brief of *O'Melia & Kaye* of Rhinelander.

For the respondents there was a brief by *Frank W. Carter* of Eagle River, attorney, and *Charles F. Smith* of Wausau of counsel, and oral argument by *Mr. Smith*.

FRITZ, J.   Plaintiff contends, in so far as the court's findings, conclusions of law, and judgment relate to the defendants Cherry and wife, that the court erred in denying plaintiff the right of foreclosure of his mortgage on Cherry's forty acres on the grounds (1) that the lien thereon was terminated by the transaction in 1930 in which plaintiff and his wife, Katie Saric, deeded their property in Indiana to Brlos in exchange for the conveyance of the mortgaged land by the warranty deed dated September 23, 1930, from the mortgagor Brlos and wife to Katie Saric; and (2) that plaintiff has been guilty of laches in respect to asserting any interest in the land now owned by Cherry.

On the other hand, the Cherrys contend that, in so far as they are concerned, the above-stated conclusions of law and judgment of the court were warranted on the ground that as against the forty acres owned by Cherry, who holds the title duly acquired thereto under tax deeds, and since September 1, 1939, has been in possession thereof and made valuable improvements thereon, the plaintiff is estopped from foreclosing the mortgage because of laches on his part in the following respects. 1st. Plaintiff's exchange in 1930 of the Indiana property owned in joint tenancy by him and his wife for the deed conveying the property in question from Brlos to plaintiff's wife with a covenant warranting the title to be free and clear of liens and incumbrances, constituted a definite act of relinquishment of his mortgage lien. 2d. Plaintiff's failure from 1930 to 1944 to assert any lien on the land as against his wife, or the subsequent owners thereof, must be considered to be in accord with this intention to relinquish his lien in 1930. 3d. By reason of plaintiff's failure and also that of his wife to pay any taxes on the land after Brlos' deed to her in 1930, and their allowing the land to be sold for the taxes of 1929 and 1930, and tax deeds to be executed in 1933 and 1934. In this latter respect there is the uncontroverted evidence that neither the Sarics nor Brlos ever paid any of the taxes on this property since 1926; that Vilas county took one tax deed on the property in 1933 and another in 1934; and that plaintiff was informed thereof during or prior to 1936.

As to the facts upon which Cherry relies in support of his contentions that plaintiff was guilty of laches in the first and second respects stated above, the following matters can be considered established by the evidence. That the plaintiff participated as a party in the transaction in 1930 by which a deed to his wife for the land in question was obtained in exchange for their Indiana property, is shown by his testimony that "I knew about the deal;" and that "As a

result of that deal in Indiana I and my wife owned those two flats and deeded them to Brlos and Brlos deeded the property up here to us." And that plaintiff intended to and held out to Brlos that he was relinquishing his lien in taking over the land on which he had the mortgage lien could be inferred by the court from such testimony of plaintiff as the following:

"*Q.* So he [Brlos] wiped that mortgage out. That is the only thing that he could give you? *A.* Well, what he can do I got to take it."
"When this deed was given by Brlos to my wife, I believe I was figuring with Brlos on the money he owed me. There was no use argument. All he had was this deed."

The fact that plaintiff had the Brlos' deed to the property made out to convey the land to plaintiff's wife, instead of to himself, does not change the facts that he knew of and participated in the deal and that the deed was made pursuant to the suggestion that he, through his wife, take over the property without foreclosure because, as he testified, "I got to take it." He testified also:

"Nothing was ever paid on these notes or mortgage from March 18, 1926. I didn't get anything. The last time I made a demand on Brlos was about six months or a year after I bought the mortgage. I didn't ask him because he had no money. He had abandoned the property. About that time, six months or a year after I bought the mortgage Brlos had abandoned the property. That is the last time I spoke to him about this."

In view of the facts and circumstances thus proven and the fact that Brlos' deed to plaintiff's wife did not contain the usual clause that the conveyance of the land was subject to the mortgage, or have any reference thereto, but, on the contrary, contained the warranty that the title was free and clear, there was ample proof to warrant the court's conclusion that plaintiff "cannot now claim that it was his intention,

nor the intention of the parties thereto, to retain" his mortgage lien.   Likewise Cherry's contention that plaintiff failed from 1930 to 1944 to assert any lien on the land as against his wife, Brlos and the subsequent owners, including Cherry, is warranted by the following testimony of plaintiff.

"*Q*. You never bothered Mr. Brlos for any of your money on this mortgage that you wiped out at the time of the deal in Indiana in 1930, after 1930, did you?   *A*. Well, I asked him.   He didn't have no money.   No use bothering him."
"When this deed was given by Brlos to my wife, I believe I was figuring with Brlos on the money he owed me.   There was no use argument.   All he had was this deed. . . . I never asked my wife to pay that mortgage."
"The last time I made a demand on Brlos was about six months or a year after I bought the mortgage.   After that time I didn't ask him."

And in addition there is the undisputed testimony by Mrs. Cherry that "Nobody ever asked us to pay any portion of this mortgage indebtedness."   Thus it was clearly established that, since the conveyance by the Brlos' warranty deed in 1930, plaintiff never asserted any claim or lien on his part against Brlos or any subsequent owner of the forty acres owned by Cherry.

Consequently, as the court concluded, there is clearly a case of laches (1) by reason of the plaintiff and his wife taking over, in exchange for their Indiana property, the mortgaged land by Brlos' warranty deed purporting to convey a free and clear title, without any exception clause as to plaintiff's mortgage or any provision negativing the relinquishment or abandonment thereof; (2) by reason of his failure since taking over the mortgaged land in his wife's name to make any claim on anyone for the payment of the mortgage debt; and (3) by reason of his conduct in allowing the land to be sold for delinquent taxes and to be conveyed by tax deeds to Vilas county and by its deed to the grantor of the forty acres to Cherry, without plaintiff doing

anything until 1944 to protect or preserve either his mortgage lien or his or his wife's interest in the land, while in the meantime Cherry, as the owner thereof since September, 1939, was lawfully in possession and making valuable improvements thereon in reliance on his title, without being given notice of any mortgage lien until informed by plaintiff in 1944. Consequently, in this equitable action for foreclosure the court was warranted in concluding "That the plaintiff has been guilty of laches in respect to asserting any interest in said premises now owned by Peter Cherry, defendant."

As this court said in *Bur v. Bong,* 159 Wis. 498, 503 *et seq.,* 150 N. W. 431, an action commenced in 1913 for the foreclosure of a mortgage executed in 1893,—

"It is contended that the plaintiff by his laches is precluded from enforcing the mortgage. In the case of *Rogers v. Van Nortwick,* 87 Wis. 414, 58 N. W. 757, this court declared that: 'A court of equity applies the rule of laches according to its own ideas of right and justice, and the courts have never prescribed any specific period applicable to every case, like the statute of limitations; and what constitutes a reasonable time within which the suit must be brought depends upon the facts and circumstances of each particular case.' The court also there quotes approvingly the following:

"'No rule of law is better settled than that a court of equity will not aid a party whose application is destitute of conscience, good faith, and reasonable diligence, and will discourage stale demands, for the peace of society, by refusing to interfere where there have been gross laches in prosecuting rights, or where long acquiescence in the assertion of adverse rights has occurred.' . . . The action is equitable in its nature and, like all rights sought to be enforced in our courts, it is subject to be defeated by the equitable defense of laches, as recognized in the law. This question arose in *McCann v. Welch, supra* [106 Wis. 142], and the court there, speaking through Justice DODGE, said: 'Courts of equity, however, are not dependent on statutes

of limitation for their right to deny hearing to those who unduly have slumbered on their rights.' While express limitation statutes have somewhat modified the position of courts in equitable actions, nevertheless exercise of its judgment to deny relief in cases of unjustifiable delay to enforce a right is not taken away by such statutes. . . . Mere delay within the statutory period of limitation is not in itself considered sufficient to bar the enforcement of a right, but if gross neglect has operated to lead the other party into a position where enforcement of the asserted right would operate to prejudice the other's beneficial interests, then equity charges the result to the negligent party and precludes him from asserting his right by refusing him the use of the courts to enforce it. The fact that plaintiff's right arises out of a money demand and a mortgage which was given to secure it, and duly recorded, does not exempt him from the operation of such defense if under the facts and circumstances his conduct and long delay in asserting such right is without reasonable explanation and he apparently acquiesced in the belief that no rights would be asserted under the mortgage, and such delay misled defendants to their prejudice, so that an enforcement of the mortgage would lead to unconscionable and inequitable results between the parties. . . . The plaintiff's neglect to enforce payment of these demands against Bong and his failure to assert any right to Mrs. Holland's property, in effect amounted to an acquiescence by silence that no claim was existent against her property and furnished a substantial and good ground to induce a feeling of security on her part that this claim against her property had been fully discharged by Bong and that it was no longer existent. Plaintiff's long and unreasonable delay in failing to proceed against Mrs. Holland on Bong's default seriously prejudiced her interest, in that it caused her to change her situation and relationship in the matter in very substantial ways to her injury, if the mortgage be now enforced, through the cost of improvements, which she could have avoided had she been informed of Bong's default, and by subjecting her property to the payment of an amount of interest on the debt in excess of the unpaid principal, which accumulated in the main after the notes given had become outlawed. We consider that the plaintiff was clearly guilty of laches as to Mrs. Holland and that an enforcement of his

mortgage against her interest in lot 15 would lead to unconscionable and inequitable results as to her, and must therefore deny him the relief awarded by the circuit court granting a foreclosure and sale of Mrs. Holland's interest in lot 15."

The principles and conclusions thus stated and applied are likewise applicable and controlling in the case at bar.

On the other hand the decisions in *Lau v. Harder*, 223 Wis. 208, 216, 270 N. W. 341, and *Johnson v. Blumer*, 183 Wis. 369, 197 N. W. 340, 198 N. W. 277, which are cited by plaintiff, are readily distinguishable. In the *Lau Case* the action was brought by Lau to enjoin enforcement of a judgment of foreclosure entered in April, 1934, on a note and mortgage executed by Lau's grantor in 1913, but on which no payment was made since October, 1918. In the foreclosure action brought in 1933 by Charlotte Harder, Lau relied upon the defense of payment and did not plead laches as a defense. After the issue of payment was decided adversely to Lau and judgment of foreclosure was entered, he commenced the action to enjoin the enforcement of the foreclosure judgment on the grounds that enforcement thereof would be unjust, unconscionable, and inequitable. In the trial court enforcement of the foreclosure judgment was enjoined, but on an appeal from the judgment to that effect it was reversed and this court said:

"The facts upon which laches were found by a divided court in *Bur v. Bong, supra,* are so different from the facts here as to render that case easily distinguishable. . . . In the present action, Mrs. Harder, the defendant, did nothing more than fail to attempt to collect the principal of her mortgage and the interest thereon for a period of about eleven years. She resided during all of that time in the east or in Canada, traveled extensively in Europe and in South America, and had no knowledge that the plaintiff was improving the farm" all of which cost him about $2,000. Plaintiff "paid no consideration for the farm except the

agreement to support his father and mother during their natural lives. The farm was freed of the burden of that contract within about three years. In our opinion, there is no evidence in this case which justifies the conclusions of the trial court that defendant was guilty of laches and that the enforcement of the foreclosure judgment would be unjust, unconscionable, or inequitable."

In addition to the fact that laches was not pleaded in the action in which the foreclosure judgment was entered, the factual situation as to each of the parties in the *Lau Case, supra,* differs so materially from the situation in the case at bar that the decision in the *Lau Case* is not in point. Neither is the decision in *Johnson v. Blumer, supra,* in point in any respect whatever.

Error is also assigned by plaintiff on the ground that the court failed to adjudge that he was entitled to recover from Brlos the amount of the principal and interest remaining unpaid on the note. Upon examining the record transmitted to and on file in this court with the certification by the clerk of the circuit court that "the annexed papers are all the original files in the above-entitled action," we find that there is no proof of any service whatever,—personal or otherwise,—of the summons or the complaint upon Brlos. Consequently, as he has never appeared or entered any appearance herein, no judgment can be entered against him personally for any recovery from him.

*By the Court.*—Judgment affirmed.