MORTGAGE ASSOCIATES, INC., Respondent, v. HENDRICKS and wife, Appellants.*

*No. 290. Argued May 5, 1971.—Decided June 7, 1971.*
(Also reported in 187 N. W. 2d 313.)

* Motion for rehearing denied, with costs, on September 8, 1971.

580

582

". . .

". . .

. . .

". . .

For the appellants there was a brief and oral argument by *A. D. Sutherland* of Fond du Lac.

For the respondent there was a brief by *Arthur M. Moglowsky* and *Bass, Goldstein & Moglowsky*, all of Milwaukee, and oral argument by *Arthur M. Moglowsky*.

WILKIE, J.  This appeal turns entirely on the single issue of whether the trial court's findings are against the great weight and clear preponderance of the evidence. Although defendants challenge certain trial court rulings excluding evidence and raise other issues of law, the central determining point of the case, crucial to our review of the trial court's findings, is the view of the trial court on the credibility of the defendants. Most of defendants' arguments are based on their testimony and require that it be believed by the trier of fact. This the trial court expressly and emphatically refused to do. In this respect the trial court acted within its basic province and we, therefore, see no reason for rejecting its contrary findings and we specifically conclude that these findings are not against the great weight and clear preponderance of the evidence.

Defendants have not shown fraud in the inducement or execution of the real estate mortgage foreclosed here. They admit the genuineness of their signatures on the mortgage. They further admit receiving the consideration described in the mortgage. They admit owing plaintiff approximately $2,400. But their whole case of fraud disintegrated when the trial court refused to believe the testimony of the defendants as to the real estate mortgage loan transaction.

The real estate mortgage here is notarized. This creates a presumption that the facts stated therein are true.[1]  When the trial court did not believe the defend-

---

[1] Sec. 137.01 (4) (c), Stats.

ants' testimony, nothing remained to rebut this presumption. Moreover, the underlying debt has been adequately established by the following:

1. The defendants admit receiving two checks totaling the principal amount of the loan;

2. The mortgage describes the underlying debt. This, in itself, is sufficient to establish the underlying debt, even in the absence of a note;[2]

3. The mortgage indicates it secures "a note of even date." While the mortgage is dated October 11, 1965, and the note dated October 8, 1965, this alone is not sufficient to warrant a court to disregard the note as evidence of the underlying debt. The note of October 8, 1965, is easily identifiable in other respects as the note referred to in the real estate mortgage of October 11, 1965. For example, the parties, the total amount of the indebtedness, the number and amount of monthly installments, and the date on which the monthly installments are to commence are identical in both instruments. A mistake in reciting the date of the note will not in and of itself invalidate the mortgage if the note can be identified by other means.[3]

The plaintiff established the execution of the real estate mortgage by defendants, the underlying debt, and the failure of defendants to make payments as required by the terms of the note.

Defendants' defense hinged principally on their own testimony. They testified that when plaintiff's representative, Quirk, came to their house on October 8, 1965, he told them he had "chattel mortgage" papers for them to sign, and he showed them the two checks and also the note and the chattel mortgage which they read. They

---

[2] *Security Nat. Bank v. Cohen* (1969), 41 Wis. 2d 710, 165 N. W. 2d 140.

[3] 59 C. J. S., *Mortgages*, p. 157, sec. 112d. This section was cited with approval in *Security Nat. Bank v. Cohen, supra,* footnote 2, at page 716.

admitted that there were other documents which they signed pursuant to Quirk's directions without reading, although they were readily available for reading. The defendants also testified that there was no mention made at this meeting of a real estate mortgage, that they never signed anything after October 8, 1965, or in the presence of two witnesses or before a notary. All of this testimony the trial court chose not to believe.

As to the note, the defendants testified (1) that the "stamp" indicating the note was "secured by a real estate mortgage of even date herewith" was not on the note when they executed it on October 8, 1965, and (2) that Quirk did not leave a copy of the note with them when he left, nor did they ever receive one from plaintiff. Again, the trial court did not believe any of this testimony.

True, the defendants offered some evidence in addition to their own testimony on their claimed lack of knowledge that they had executed a real estate mortgage.

1.  They offered a "letter" from defendants to plaintiff sent sometime in March, 1967, requesting another loan in the amount that they had repaid since October, 1965, but stating:

"We expect to use the household chattels you now hold on our present loan for collateral.
"If a second mortgage is necessary on our home we do not want the loan."

This handwritten "rough draft" was admitted in evidence over plaintiff's objection that there was no foundation laid, especially since that copy was not actually sent, nor was there evidence, other than defendants' testimony, that it was an identical copy of a letter received by plaintiff. Plaintiff's counsel indicated there was no such letter in plaintiff's file.

Defendants then introduced a letter on plaintiff's letterhead addressed to them and dated March 6, 1967, refusing their request for a loan, stating:

". . . Because of the amount you requested we felt that a second mortgage would be mandatory and since you did indicate that you would not want a loan on this basis we cannot extend credit to you at this time."

Plaintiff also objected to the admission of this letter and noted that plaintiff's file contained no copy of this letter either. This letter was received in evidence.

2. Defendants testified that in January, 1968, they applied to Wisconsin Finance in Fond du Lac for a loan and were informed at that time that Mortgage Associates had a second mortgage on their home. According to defendants, this was their first knowledge of the second mortgage. So defendants refused to make further payments. They then filed a petition in bankruptcy, listing the mortgage as disputed. Plaintiff was notified of the proceeding, but did not appear and defendants were discharged.

3. Defendants also made an offer of proof as to what they did when they learned, allegedly for the first time in January, 1968, of the second real estate mortgage held by plaintiff. They went to the district attorney and complained they were defrauded. They then went to a handwriting expert in Madison whose opinion it was that defendants' signatures on the real estate mortgage were valid. No testimony was offered by this expert at trial, and the trial court held this whole matter was immaterial since defendants admitted signing the mortgage.

4. Defendants also attempted to show that the top portion of the real estate mortgage was typed at a different time than the bottom portion and on a different typewriter. The manner of doing so was most unusual. They first attempted to establish this point through the testimony of the clerk of courts, who refused to be a witness. Counsel for the plaintiff was then asked to admit the use of two different typewriters. Quite explainably, he refused. Counsel for defendants was then properly refused a continuance to "get somebody to testi-

fy." In the end the defendants did not establish that two typewriters were used.

5. Defendants introduced (1) a finance statement which indicates the loan was secured by "household equipment of every kind and nature, . . ." with no reference to a real estate mortgage; and (2) a statement of loan (pursuant to sec. 115.07, now sec. 138.07, Stats.) which bears a printed notation on the bottom: "This Loan is evidenced by a Note secured by a Chattel Mortgage." This form is identical in color and form to the note. The note also has a printed notation at the bottom: "(This note is secured by a chattel mortgage)." However, the note bears a rubber stamp reference to a real estate mortgage of even date. The statement of loan does not.

The trial court did not feel it was necessary to consider any of these items of evidence since it did not believe defendants' testimony as to the transaction, especially that they were not aware that they had executed a real estate mortgage.

Obviously, if the court had believed defendants' testimony, these several items of evidence would corroborate what defendants said. But the court disbelieved the defendants and we therefore must conclude that the findings are not against the great weight and clear preponderance of the evidence.

Defendants failed in several respects to prove points that would have corroborated their testimony. For example, the expert opinion on the typewriter problem was not introduced; nor was the handwriting expert called; the representative of Bilt-Rite was not called to testify, hence defendants were precluded from offering evidence that might have been helpful to their case (*i.e.,* that Bilt-Rite agreed to lend them the $3,000 with no security whatsoever), excluded as hearsay; the notary and attesting witnesses were not called to testify as to whether defendants in fact signed the mortgage in their presence

(if not, the presumption arising from the notary's seal might have been destroyed) ; no questions were asked of plaintiff's officer, Krantz (nor was any other witness from plaintiff's employ called) to explain the notation on the "credit investigation" sheet: "Close as Personal Loan 2nd Mtg.—car & HHG," especially in light of the approval apparently on "9–22–65" with no security indicated. Nor was the lawyer who drafted the mortgage called to testify as to the real estate mortgage—*e.g.,* why it did not state it was a second mortgage, etc.

Many inferences favorable to defendants might be drawn from these documents, but the inferences are obviously for the trial court. It did not believe defendants' testimony. Without their testimony, the documents carry little weight.

Defendants' final argument concerns the failure of the statement of loan, as given by the plaintiff to the defendants, to indicate that the loan (note) was secured by a real estate mortgage. Defendants' contention is that since this is an equity proceeding,[4] and in such a proceeding plaintiff must do equity,[5] plaintiff does not come in with clean hands when it fails to give defendants a proper statement of loan. On this point, defendants contend that this failure to leave a proper statement of loan is a criminal offense.

This transaction was governed by sec. 138.07, Stats. (collateral loan law). Sec. 138.07 (4) incorporates provisions of sec. 138.09 (the discount loan law). One of the provisions spelled out by sec. 138.09 (8) is:

"(8) Every licensee shall:
"(a) Deliver to the borrower, at the time a loan is made, a statement in the English language showing in clear and distinct terms the amount and date of the note and of its maturity, *the nature of the security,* if any, for the loan . . . ." (Emphasis added.)

---

[4] *Frick v. Howard* (1964), 23 Wis. 2d 86, 96, 126 N. W. 2d 619; *Saric v. Brlos* (1945), 247 Wis. 400, 19 N. W. 2d 903.

[5] *Huntzicker v. Crocker* (1908), 135 Wis. 38, 41, 115 N. W. 340.

Defendants argue that the failure to comply with the provisions of sec. 138.07, Stats., is a misdemeanor: that it is obvious plaintiff did not comply with sec. 138.09 (8) as incorporated into sec. 138.07 by sub. (4), and therefore it should be precluded from seeking an equitable remedy here.

Defendants misread the law. Sec. 138.07 (3) (g), Stats., makes the *wilful* violation of any of the provisions of sec. 138.07 a misdemeanor. While the penalty provision of the discount loan law—sec. 138.09 (10)—does not require a *wilful* violation, this provision of sec. 138.09 (10) was not incorporated into sec. 138.07 by sub. (4) thereof. Defendants have not established a wilful violation of sec. 138.09 (8), and so their allegation that plaintiff has committed a misdemeanor is unfounded. Neither should plaintiff be barred from pressing its foreclosure action.

It is of some significance that, in adopting sec. 138.07, Stats., the legislature did not choose to adopt the same remedy as in ch. 214, relating to small loans, which not only provides that a wilful violation of any provision in that chapter shall constitute a misdemeanor, but also provides that such a violation renders the loan contract void with no right in the lender to collect, even though the contract was not invalid for any other reason.[6] There is no such provision here with respect to this type of loan.

In the final analysis, defendants lost their defense because the trial court simply did not believe them. It was the trier of fact. It acted within its province in rejecting defendants' testimony and in awarding judgment to the plaintiff in its foreclosure action.

*By the Court.*—Judgment affirmed.

---

[6] Sec. 214.22, Stats.