BADGER STATE AGRI-CREDIT & REALTY, INC., a Wisconsin corporation,
Plaintiff-Respondent and Cross-Appellant,

v.

Ronald J. LUBAHN, a/k/a Ronald Lubahn, Patricia Lubahn and Cloverbelt Cooperative Services, a Wisconsin cooperative, Defendants.

Elva MARKS, Defendant and Cross-Respondent,

FIRST NATIONAL BANK OF WEST BEND, a Wisconsin banking institution, Defendant,

ATHENS COOPERATIVE, a Wisconsin cooperative, Defendant and Co-Appellant.

Court of Appeals

*No. 84–369. Argued October 24, 1984.—Decided January 23, 1985.*
(Also reported in 365 N.W.2d 616.)

For the defendant and co-appellant, there were briefs by *Raymond F. Thums* and *Sandra J. Marcus* of *Krueger, Thums, Tlusty, Hittner & Kennedy, S.C.*, of Schofield.

For the plaintiff-respondent and cross-appellant, there were briefs by *Tuchscherer, Bradley & Kurth, S.C., Steven D. Robinson* and *Konrad T. Tuchscherer,* of Wausau. Oral argument by *Konrad T. Tuchscherer.*

For the defendant and cross-respondent, briefs by *Stanley L. Lind,* of Milwaukee. Oral argument by Samuel Murray.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

SCOTT, C.J.  Athens Cooperative (Athens) appeals from that portion of a judgment ordering that the sum of $265,516.12 is due to Badger State Agri-Credit & Realty, Inc. (Badger) and ordering that any interest or lien that Athens claims in and to certain real estate is subsequent, subordinate and junior to the lien of Badger's mortgage.  Badger cross-appeals from that portion of the judgment holding that Elva Marks has a right of possession to a certain portion of a land parcel which is prior and senior to Badger's mortgage and that such right of possession cannot be defeated by a pending foreclosure sale.

The issue on appeal is whether the mortgage containing a dragnet clause for antecedent debts is enforceable. We conclude that because the amount of debt was stated in the mortgage and is identifiable from the mortgage documents, the mortgage is enforceable.  Accordingly, we affirm.

The issue on cross-appeal is whether the foreclosure judgment in favor of Badger defeats Elva Marks' interest in the land parcel.  Because we conclude that Elva Marks' right of possession constitutes a "claim or interest" within the meaning of sec. 706.09 (2), Stats., which was of record at the time the mortgage was taken, we hold that the foreclosure judgment in favor of Badger does not defeat Elva Marks' interest.  Accordingly, we affirm.

Badger brought this action to foreclose on certain parcels of land located in Washington county which secured several notes. Ronald and Patricia Lubahn (Lubahns) were the signers of the notes.

The Lubahns were owners of land parcels known as the 9.14 acre parcel and the 9.9 acre parcel in Washington county. On March 26, 1980, they obtained land known as the 4.4 acre parcel. The 4.4 acre parcel was improved by a farmhouse and barn and was formerly the homestead of James Marks. The Lubahns obtained the 4.4 acre parcel pursuant to a trustee's deed which conveyed the parcel to them "SUBJECT TO the right of possession to the upper flat of the dwelling house granted to Elva Marks described in the Estate of James Marks, Deceased, Court File No. 28757." Elva is James Marks' daughter.

On November 23, 1981, in order to secure four notes of indebtedness and in consideration of the reduction of a certain milk assignment, the Lubahns executed and delivered to Mid-State Sales Company and Kenneth Shong a mortgage for $239,000. This mortgage was secured by the 4.4, 9.14 and 9.9 acre parcels. The mortgage listed the amount secured as $239,000 and stated on its face that it was given "to further secure present indebtedness." Elva Marks was listed as a mortgagee, but she did not sign the mortgage. Mid-State Sales Company assigned the notes and mortgage to Badger.

Athens obtained a judgment (on an unrelated claim) against all three parcels for $46,396.91 entered on January 26, 1982. On February 28, 1983, Badger filed this foreclosure action.

The trial court found that the $239,000 mortgage was enforceable. It found that the mortgage was supported by adequate consideration and that the amount of indebtedness was supported by a series of mortgage notes and the reduction of a Lubahn milk assignment. The trial court further determined that Athens' interest or

lien in the real estate, by virtue of its judgment, was subsequent, subordinate and junior to the lien of Badger's mortgage.

The trial court also found that Elva Marks has an interest in the 4.4 acre parcel described as a "right to possession." The trial court took judicial notice of Washington county circuit court file no. 28757, Estate of James Marks, containing the will of James Marks, the final probate judgment and a copy of the trustee's deed. The trial court determined that Elva Marks did not join in the mortgage and that her right of possession could not be defeated by the pending foreclosure sale.

## ENFORCEABILITY OF BADGER STATE'S MORTGAGE

An appellate court must separate the factual findings of the trial court from the conclusions of law and apply the appropriate standard of review to each. *Department of Revenue v. Exxon Corp.*, 90 Wis. 2d 700, 713, 281 N.W.2d 94, 101 (1979), *aff'd*, 447 U.S. 207 (1980). The determination as to whether the underlying debt in the mortgage is sufficiently identifiable is one of fact which shall not be set aside on appeal unless clearly erroneous. Sec. 805.17(2), Stats. Whether a mortgage containing a dragnet clause is enforceable in Wisconsin is a question of law which we shall decide independently without deference to the decision of the trial court. *See Ball v. District No. 4, Area Board of Vocational, Technical & Adult Education*, 117 Wis. 2d 529, 537, 345 N.W.2d 389, 394 (1984).

Dragnet clauses are generally looked upon with disfavor and are carefully scrutinized. *Capocasa v. First National Bank*, 36 Wis. 2d 714, 721–22, 154 N.W.2d 271, 275 (1967). The burden of specifically proving the in-

debtedness secured by the mortgage is upon the mortgagee. *Id.* at 720, 154 N.W.2d at 274. Extrinsic evidence may be used to ascertain and prove the debt. *See Mortgage Associates, Inc. v. Hendricks,* 51 Wis. 2d 579, 585, 187 N.W.2d 313, 315 (1971) ; *Security National Bank v. Cohen,* 41 Wis. 2d 710, 715–16, 165 N.W.2d 140, 142–43 (1969).

Athens claims that a mortgage containing a dragnet clause for antecedent debts which does not specifically identify the underlying debt is not enforceable in Wisconsin. The trial court found, however, that the mortgage was supported by adequate consideration and that the indebtedness was supported by a series of mortgage notes and the reduction of a certain milk assignment at the time the mortgage was granted. These findings are not clearly erroneous and will not be disturbed on appeal. Additionally, in *Capocasa* the supreme court held that a dragnet clause in a mortgage may secure "any existing or future individual indebtedness to the mortgagee . . . ." *Capocasa* at 727, 154 N.W.2d at 278. Therefore, a dragnet clause may cover any specifically named debt and any existing debt.

In this case, the amount of indebtedness—$239,000—is plainly stated on the face of the mortgage. The trial court found that the extrinsic evidence presented was sufficient to ascertain the components underlying the debt. We conclude, therefore, that Badger's mortgage is enforceable. The trial court correctly determined that Badger's mortgage was valid and superior to Athens' judgment.

## NATURE OF ELVA MARKS' PROPERTY INTEREST

Again, the question on cross-appeal involves the nature of the property interest conveyed to Elva Marks

in a trustee's deed to the Lubahns. The issue is whether the foreclosure judgment in favor of Badger defeats Elva Marks' interest under the trustee's deed. The determination of this issue involves a question of law which we shall review independently without deference to the decision of the trial court. *Ball* at 537, 345 N.W. 2d at 394.

The trustee's deed, dated March 26, 1980, states that pursuant to the Last Will and Testament of James Marks, the trustee of the trust created under the Last Will and Testament of James Marks conveys to Ronald and Patricia Lubahn all right, title, estate and interest to the 4.4 acre parcel "SUBJECT TO the right of possession to the upper flat of the dwelling house granted to Elva Marks described in the Estate of James Marks, Deceased, Court File No. 28757."

The trial court found that the language of the trustee's deed did not create a life estate but did create a property interest in favor of Elva Marks which could not be foreclosed upon. The trial court concluded that Elva Marks has an interest in the 4.4 acre parcel, described as a "right to possession," which cannot be made subordinate to Badger's mortgage unless she joined in the execution of the mortgage. The trial court found that Elva Marks had not joined in the execution of the mortgage.

Badger contends that the interest conveyed to Elva Marks in the trustee's deed was nothing more than a month-to-month tenancy or a personal privilege which was terminated by the foreclosure proceedings. We disagree.

First, we reject Badger's contention that reservations in deeds to third parties are per se void.[1] Section 700.16,

---

[1] Badger cites *Strasson v. Montgomery*, 32 Wis. 52 (1873), for the proposition that reservations in deeds to third parties are void. In *Strasson* at 57–58, the supreme court held that the language of the exception or reservation clause rendered it unenforce-

Stats., permits restrictions on alienation of property within specified limits. Section 700.16 (1) (a) states:

A future interest or trust is void if it suspends the power of alienation for longer than the permissible period. The permissible period is a life or lives in being plus a period of 30 years.

We hold that the reservation to Elva Marks in the trustee's deed is permitted under sec. 700.16 (1) (a), Stats., because it does not suspend the power of alienation for a period in excess of a life in being plus thirty years. We conclude that the reservation to Elva Marks contained in the trustee's deed was valid.

Second, we reject Badger's contention that even if reservations in deeds to third parties are not void per se, there are only certain legal methods available to restrain alienation of property after death, most notably, a life estate. Badger contends that a mere right of possession is a concept not recognized in law. We disagree.

We conclude that in this case, the label given to Elva Marks' interest or right is not controlling. The concern is whether the reservation or restraint on the alienation of the property is reasonable. The Restatement (Second) of Property, Donative Transfers, § 4.1, illustration 9 (1983), recognizes reservations and restraints of the type presented in this case. Illustration 9 provides:

9. O, owning the family home in fee simple absolute, makes an otherwise effective devise thereof to S (O's

able. On alternative grounds, the court held the reservation void as it was in favor of a stranger to the deed. In this case, the language used in the reservation is clear and unambiguous. In addition, Elva Marks does not have the same status of "stranger" as in *Strasson*.

son) and his heirs "provided, however, that S shall permit W (O's seventy year old wife) to reside in the family home as long as she desires to do so and any transfer of the family home without W's consent during the time that W resides there shall be null and void." The property subject to the restraint is currently transferable by S with the consent of W. The purpose of the restraint is to assure W of a place of residence; the restraint can last no longer than W's lifetime; and O could have achieved a similar result by creating a legal or equitable life estate in W with a remainder to S in fee simple absolute. In the absence of countervailing factors, the legal policy favoring freedom of alienation does not reasonably apply. The disabling restraint is valid, and any transfer of the family residence without W's consent while she is residing therein is null and void.

In this case, James Marks in his Last Will and Testament gave the property to his trustee in trust and with the purpose that Elva Marks be permitted to occupy the upper flat of the dwelling house.[2] It was specifically provided that the dwelling site shall not be sold by the trustee without the consent of Elva Marks unless she vacates the property to live elsewhere. This situation is strikingly similar to the set of facts presented by the above illustration. The Restatement, therefore, supports our conclusion that Elva Marks' interest is valid and recognized in law; the legal policy favoring freedom of alienation does not reasonably apply.

Third, we reject Badger's contention that the trustee had no authority to grant or create the type of reservation created in favor of Elva Marks. The trustee did not *grant* or *create* the reservation to Elva Marks in

---

[2] The trial court took judicial notice of the probate file in the estate of James Marks. The probate file was not marked as an exhibit in the record nor made a part of the record on appeal. Portions of the file, however, were included in the parties' briefs. Both parties refer specifically to the contents of James Marks' will and do not dispute its language.

the trustee's deed. James Marks created the reservation to Elva Marks in his will. The final probate judgment specifically adjudged that under the Last Will and Testament of James Marks, Elva Marks had the right to occupy the upper flat of the dwelling house. Under sec. 701.19, Stats., the trustee had authority to execute a trustee's deed in accordance with the final probate judgment by virtue of his powers as trustee. Therefore, the trustee did not grant or create the reservation to Elva Marks but merely carried out the intent of James Marks through his powers as trustee.

Finally, we reject Badger's contention that its foreclosure judgment defeats Elva Marks' interest under the trustee's deed. Chapter 274, Laws of 1967, created sec. 235.491, Stats., renumbered as sec. 706.09, Stats., to deal with the merchantable title problem that existed in Wisconsin.[3] "The new statute's basic approach to the

[3] Section 706.09(2), Stats., provides:

(2) NOTICE OF PRIOR CLAIM. A purchaser has notice of a prior outstanding claim or interest, within the meaning of this section wherever, at the time such purchaser's interest arises in law or equity:

(a) *Affirmative notice.* Such purchaser has affirmative notice apart from the record of the existence of such prior outstanding claim, including notice, actual or constructive, arising from use or occupancy of the real estate by any person at the time such purchaser's interest therein arises, whether or not such use or occupancy is exclusive; but no constructive notice shall be deemed to arise from use or occupancy unless due and diligent inquiry of persons using or occupying such real estate would, under the circumstances, reasonably have disclosed such prior outstanding interest; nor unless such use or occupancy is actual, visible, open and notorious; or

(b) *Notice of record within 30 years.* There appears of record in the chain of title of the real estate affected, within 30 years and prior to the time at which the interest of such purchaser arises in law or equity, an instrument affording affirmative and

problem is to cut off specific adverse interests that exist beyond a given period, unless; (1) notice of the interest has been placed on record, or (2) the purchaser has 'affirmative notice' of the claimed adverse interest." Note, *Real Estate—Title Legislation—Merchantability of Title,* 68 Wis. L. Rev. 937, 937 (1968) (footnotes omitted). "The policy behind the new statute may be viewed as a compromise between complete merchantability and the stringent protection of hidden land interests. Clearly, a stringent protection of hidden interests is unduly restrictive of land transfers, yet the complete removal of protection of legitimate interests would be intolerable." *Id.* at 939.

Under the provisions of sec. 706.08(1)(a), Stats.,[4] as a purchaser in good faith, Badger is deemed to have examined the record and to have notice of the contents of all instruments in the chain of title and of the contents of instruments referred to in the chain of title. *Kordecki v. Rizzo,* 106 Wis. 2d 713, 719, 317 N.W.2d 479, 482–83 (1982). Therefore, Badger is deemed to have had notice of Elva Marks' interest pursuant to the trustee's deed as well as the documents contained in the court file referred to in the trustee's deed. Consequently, Elva Marks' interest in the 4.4 acre parcel was protected

express notice of such prior outstanding interest conforming to the requirements of definiteness of sub. (1)(b); or

(c) *Same.* The applicable provisions of sub. (1)(c) to (k) requiring that an instrument remain for a time of record, have not been fully satisfied.

[4] Section 706.08(1)(a), Stats., provides:

Every conveyance (except patents issued by the United States or this state, or by the proper officers of either) which is not recorded as provided by law shall be void as against any subsequent purchaser in good faith and for a valuable consideration of the same real estate or any portion thereof whose conveyance shall first be duly recorded.

under sec. 706.08 (1) since it was recorded in the trustee's deed and it was of record at the time Mid-State took the mortgage from the Lubahns and subsequently when Mid-State assigned the mortgage to Badger.

We hold that Badger had notice of Elva Marks' prior outstanding "claim or interest" pursuant to sec. 706.09 (2), Stats. Her "claim or interest" was established in the trustee's deed which specifically refers to the estate of James Marks and the court file number. Badger, as an interested party in the foreclosure action, had the same duty as that of a subsequent good faith purchaser to identify those with an interest in the property. *See Mercantile Contract Purchase Corp. v. Melnick*, 47 Wis. 2d 580, 585–87, 177 N.W.2d 858, 860–61 (1970). For all of the foregoing reasons, we conclude that the foreclosure judgment in favor of Badger does not defeat Elva Marks' "claim or interest" under the deed.

*By the Court.*—Judgment affirmed.