Arthur L. GILLESPIE, Jr., Plaintiff-Appellant,

v.

Billy DUNLAP, Defendant-Respondent.†

Court of Appeals

*No. 85–0440. Submitted on briefs June 18, 1985.—
Decided July 15, 1985.*
(Also reported in 373 N.W.2d 61.)

† Petition to review pending. This petition was not decided at the time the volume went to press. Its disposition will be reported in a later volume.

For the plaintiff-appellant the cause was submitted on the briefs of *Michael, Best & Friedrich,* with *John K. MacIver, John A. Busch,* and *Chris J. Trebatoski* of counsel, of Milwaukee.

For the defendant-respondent the cause was submitted on the briefs of *Wiernick & Karp, S.C.,* with *David B. Karp* of counsel, of Milwaukee.

Before Wedemeyer, P.J., Moser and Sullivan, JJ.

MOSER, J. Arthur L. Gillespie, Jr. (Gillespie) appeals from a judgment ordering him to tender a quit-claim deed to the real estate located at the city of Milwaukee common address of 1246 West Atkinson Avenue to Billy Dunlap (Dunlap) pursuant to the equitable estoppel theory found in sec. 706.04(3), Stats.

In January, 1979 Gillespie owned the real estate and entered into an agreement with Dunlap for its use as a barbershop. The agreement was in writing but was never signed by either party. The agreement called for Dunlap to pay monthly rent in the amount of $300 and by its terms contained an option to purchase. The term of the lease was four years, at which time the purchase option came into play. On January 1, 1984, Dunlap ceased payment of rent because he assumed he had fulfilled his part of the bargain and was now owner of the property. Several months later Gillespie filed suit to evict Dunlap from the barbershop property. Dunlap

admitted all facts necessary for Gillespie to secure judgment for eviction, but asserted the purchase option as a counterclaim. At trial both parties introduced unsigned photocopies of the agreement. Gillespie's copy had blank spaces for the terms of the sale. Dunlap's contract called for $1 as the purchase price at the end of the four-year lease.

Both parties stipulated at the commencement of the trial that no testimony was needed on Gillespie's eviction complaint because he had met all the statutory requirements to prove the eviction. Dunlap conceded damages for rent in the amount of $3,850. The parties further agreed that Gillespie was entitled to judgment if Dunlap's counterclaim failed.

Dunlap's counterclaim was for equitable relief pursuant to sec. 706.04(2) and (3), Stats.,[1] requesting the trial court to order Gillespie to provide him with a

[1] Sec. 706.04, Stats., provides:

Equitable relief. A transaction which does not satisfy one or more of the requirements of s. 706.02 may be enforceable in whole or in part under doctrines of equity, provided all of the elements of the transaction are clearly and satisfactorily proved and, in addition:

(1) The deficiency of the conveyance may be supplied by reformation in equity; or

(2) The party against whom enforcement is sought would be unjustly enriched if enforcement of the transaction were denied; or

(3) The party against whom enforcement is sought is equitably estopped from asserting the deficiency. A party may be so estopped whenever, pursuant to the transaction and in good faith reliance thereon, the party claiming estoppel has changed his position to his substantial detriment under circumstances such that the detriment so incurred may not be effectively recovered otherwise than by enforcement of the transaction, and either:

(a) The grantee has been admitted into substantial possession or use of the premises or has been permitted to retain such possession or use after termination of a prior right thereto; or

(b) The detriment so incurred was incurred with the prior knowing consent or approval of the party sought to be estopped.

quitclaim deed on the grounds of unjust enrichment or equitable estoppel.

At trial only Dunlap and Gillespie testified. Dunlap testified that he had been a barber at the 1246 West Atkinson Avenue address for at least fifteen years prior to trial. Immediately prior to January, 1979, Gillespie, who owned the premises, was going to evict the operator of the barbershop. Dunlap and Gillespie entered into negotiations to turn the property over to Dunlap, which resulted in the unsigned written contract. Dunlap testified that Gillespie wanted to get out of the troublesome ownership of this property because the property was in a downtrodden condition. He further testified that they entered into the following agreement: Dunlap would pay $300 per month rent, repair and maintain the building, pay all property taxes and, at the end of the four years, he would be given ownership of the building via a quitclaim deed on payment of $1. Dunlap further testified that his attorney could never get Gillespie to sign the contract. Dunlap further testified that he paid no rent following January 1, 1984, because he assumed he owned the premises.

Gillespie testified that the proposed written agreement never materialized because it was not signed by either party. Thus, the only agreement between the parties was that Dunlap would pay rent of $300 per month.

Dunlap paid all the rent and property taxes for the four-year term of the lease and expended somewhere between $17,000 and $19,000 for repairs and improvements on the property during the period he was in control of the premises. This evidence is uncontroverted in the record. It is further uncontroverted from the record that the value of the property at the time of the trial was approximately $14,413.

The trial court, after reviewing the conveyancing statutes involved,[2] found that Gillespie was paid $14,400 in rent from January 1, 1979, to January 1, 1984, and that during the term Dunlap had not only maintained the premises but had made substantial restorative expenditures as well. The trial court further determined that it could be inferred from these facts that no reasonable person would restore the premises without the expectation of ownership. The court found that Dunlap's version was the agreement of the parties and imposed the equitable features of sec. 706.04(3), Stats., on Gillespie because: (1) there was no dispute that Dunlap was "admitted into substantial possession" of the premises; (2) Dunlap changed his position to his substantial detriment by paying the $300 monthly rental, the property taxes and the substantial restorative costs of the property; and (3) Dunlap could not otherwise effectively recoup his losses. Thus, the trial court held that Gillespie was estopped from denying the agreement of sale.

Appellate courts separate trial court fact-finding from conclusions of law and apply the appropriate standard of review to each. Fact-finding by a trial court will not be upset unless clearly erroneous,[3] but appellate courts give no deference to a trial court's conclusions of law.[4] Statutory construction presents a conclusion of law.[5]

---

[2] Secs. 706.01(1) and (6), 706.02(1) and 706.04(3)(a) and (b), Stats.

[3] Sec. 805.17(2), Stats.; *Badger State Agri-Credit & Realty, Inc. v. Lubahn,* 122 Wis. 2d 718, 723, 365 N.W.2d 616, 619 (Ct. App. 1985).

[4] *Badger State, supra* note 3, at 723, 365 N.W.2d at 619.

[5] *Behnke v. Behnke,* 103 Wis. 2d 449, 452, 309 N.W.2d 21, 22 (Ct. App. 1981).

Chapter 706, Stats., governs every transaction by which an interest in land is created or aliened in law or in equity.[6] Normally the statute of frauds requires all contracts conveying or aliening interests in land to be in writing and to identify the parties, the land, and the interest conveyed. The delivered document must also be signed by the grantor and the grantee.[7] One of the statutory methods courts can employ to transfer title without meeting those formal requirements is equitable estoppel.[8] Equitable estoppel closely resembles the doctrine of part performance and requires that a substantial performance of an oral contract conveying land can be enforced if the elements of the contract are clearly and satisfactorily proved so that the contract falls within one of the exceptions to the statute of frauds.[9] There are essentially three elements required to prove equitable estoppel: (1) action or inaction which induces, (2) good faith reliance by another, (3) to that person's detriment.[10]

Here the trial court found that all the monthly payments were promptly made for a total of $14,400, that at the beginning of the agreement the property was decrepit, and that Dunlap extensively renovated the building during the rental period. The trial court also found that the fair market value of the property at the time of trial was $14,413, and that because of the renovations and Dunlap's hard work the barber business prospered. It further found that Dunlap, if evicted, would suffer untoward business relocation expenses and

---

[6] Sec. 706.01(1), Stats.

[7] Sec. 706.02(1), Stats.

[8] Sec. 706.04(3), Stats.

[9] *In re Estate of Lade*, 82 Wis. 2d 80, 84, 260 N.W.2d 665, 668 (1978).

[10] Sec. 706.04(3), Stats.; *Mercado v. Mitchell*, 83 Wis. 2d 17, 26–27, 264 N.W.2d 532, 537 (1978).

would lose clientele. The court further found these facts were proved by clear and satisfactory evidence. From this it concluded that Gillespie ought to be equitably estopped from enforcing the statute of frauds because: (1) Dunlap was in possession of, used and retained possession of the premises;[11] (2) Dunlap detrimentally changed his position in good faith reliance on a contract of sale by his timely payments of rent, his maintenance and restoration costs, and his hard work in establishing a successful barbering business; and finally (3) denying equitable estoppel would result in a loss of all of Dunlap's past financial input towards the rehabilitation of a rundown building, plus the costs of relocating and the resultant loss of clientele. The court concluded that estoppel should be imposed because Dunlap could not otherwise effectively recover his detriment.[12]

The trial court's findings of fact are not clearly erroneous, and its conclusions of law properly apply the equitable estoppel statute. Gillespie is estopped from imposing the statute of frauds because his inaction induced Dunlap to rely in good faith on the terms of the contract to his financial detriment. Dunlap is therefore entitled to judgment ordering Gillespie to tender a quitclaim deed. But, because the trial court relied on Dunlap's testimony regarding the terms of the contract, we modify the judgment to conform with those terms. Dunlap, before the receipt of his deed, is therefore required to pay Gillespie $1.

*By the Court.*—Judgment affirmed as modified.

---

[11] Sec. 706.04(3)(a), Stats.

[12] Sec. 706.04(3), Stats.