MITCHELL BANK, Plaintiff-Appellant,†

v.

Thomas G. SCHANKE, Alfred G. Waltke, Marilyn M. Waltke, State of Wisconsin Department of Revenue and Internal Revenue Service, Defendants-Respondents,

UNITED STATES, Defendant. [Case No. 01–1590.]

Thomas G. SCHANKE, Plaintiff-Respondent,

v.

MITCHELL STREET STATE BANK, n/k/a Mitchell Bank, Defendant-Appellant.† [Case No. 01–1591.]

Court of Appeals

*Nos. 01–1590, 01–1591. Submitted on briefs January 10, 2002. —Decided August 28, 2002.*

2002 WI App 225

(Also reported in 652 N.W.2d 636.)

† Petition to review granted 1-14-03.

On behalf of the plaintiff-appellant and defendant-appellant, the cause was submitted on the briefs of *Hugh R. Braun* and *Jeffrey L. Janik* of *Godfrey, Braun & Frazier, LLP*, Milwaukee.

On behalf of the defendant-respondent and plaintiff-respondent Thomas G. Schanke, the cause was submitted on the brief of *Joseph J. Welcenbach* of *Welcenbach & Widmann*, Milwaukee.

Before Brown, Anderson and Snyder, JJ.

¶ 1. SNYDER, J. Mitchell Street State Bank, now known as Mitchell Bank, appeals from a judgment and an order dismissing its foreclosure complaint against Thomas G. Schanke, Alfred G. and Marilyn M. Waltke (the Waltkes), the state Department of Revenue and the Internal Revenue Service and from a judgment in favor of Schanke invalidating Mitchell Bank's mortgage lien

on certain Genesee, Wisconsin property. Mitchell Bank argues that foreclosure of the mortgage in question is not barred simply because the note referenced in said mortgage is lost. We disagree and affirm both judgments and the order of the trial court.

## PROCEDURAL BACKGROUND

¶ 2. Schanke filed a declaratory judgment action on March 7, 2000, requesting that a Mitchell Bank mortgage dated May 7, 1987, and recorded June 2, 1987, be declared invalid; he argued that Mitchell Bank was unable to produce the note attached to and referenced in the mortgage. On August 9, 2000, Mitchell Bank responded to Schanke's declaratory judgment action by filing a mortgage foreclosure action. The matters were consolidated before the trial court.[1] Thereafter, the trial court granted Schanke's request for declaratory relief by declaring the mortgage lien invalid and releasing and striking the mortgage from the record, finding that there was no note in existence. Correspondingly, the trial court dismissed Mitchell Bank's foreclosure complaint with prejudice. Mitchell Bank appeals.

## FACTS

¶ 3. The historical financial facts surrounding the Mitchell Bank mortgage transaction, while undisputed, are substantial and complex.

*The Mortgage*

¶ 4. On May 7, 1987, the Waltkes executed a real estate mortgage (Mortgage) providing Mitchell Bank

---

[1] The parties stipulated to trial on the foreclosure action as incorporating all disputed issues. We consolidated the matters for appeal.

with a security interest in the Waltkes' thirty-four acres of non-homestead real estate located in Genesee, Wisconsin (Genesee property). The Mortgage referenced a specific note (Note) issued for $50,000 by the Waltkes dated May 7, 1987.[2] The Mortgage, in paragraph four, also referenced *all past,* present and future debts. Mitchell Bank recorded the Mortgage on June 2, 1987.

*Past Debts*

¶ 5. It is undisputed that Mitchell Bank is unable to produce the May 7, 1987 Note referenced in the Mortgage. Nor does Mitchell Bank contend that *future* financial obligations were made to it by the Waltkes after May 7, 1987, the date of the Mortgage and missing Note. However, Mitchell Bank contends that the Mortgage covered not only the $50,000 May 7, 1987 Note, but that it secured all obligations of the Waltkes to Mitchell Bank and any obligation of others that the Waltkes had guaranteed by virtue of paragraph four.

¶ 6. As of March 28, 2001, Mitchell Bank calculated the Waltkes' unpaid past debts secured by paragraph four of the Mortgage to be $67,000 in principal and $124,781.10 in interest, totaling $191,781.10. The calculation included debts representing three separate financial transactions between Mitchell Bank and the Waltkes.

¶ 7. First, on May 29, 1986, the Waltkes executed a continuing guarantee agreement with Mitchell Bank guaranteeing payment of a $15,000 business note in connection with a loan from Mitchell Bank to Miracle

---

[2] The Mortgage referenced a Note dated May 14, 1987. However, that date was scratched out and the date of May 7, 1987, was substituted. The Waltkes' initials appear beside the date change.

Shield International, Inc., one of the Waltkes' business interests. Repayment was due on May 29, 1988. According to Mitchell Bank's calculation, a balance of $5,000 remains on the Miracle Shield note and the Waltkes' guarantee as a past debt secured by the Mortgage.

¶ 8. Second, on June 4, 1986, the Waltkes executed a continuing guarantee agreement guaranteeing payment of a $25,000 business note to Mitchell Bank on a loan to Gary Butler, one of the Waltkes' business associates. The original note had a repayment due date of July 4, 1986. On July 4, 1986, the Waltkes guaranteed a renewal of the Butler business note to Mitchell Bank with a repayment date of August 4, 1986. On August 4, 1986, the Waltkes again guaranteed a renewal of the Butler business note for $25,000 with a due date of November 3, 1986. On November 3, 1986, the Waltkes again executed a guarantee of repayment of the Butler note to Mitchell Bank in the amount of $25,000 with a due date of February 2, 1987. According to Mitchell Bank, that balance was a past debt at the time of the Mortgage and remained unpaid as of March 28, 2001.

¶ 9. Finally, on September 4, 1986, the Waltkes executed a business note to Mitchell Bank representing a $50,000 loan to the Waltkes that included a security interest in a Champlain printing press. Repayment was due December 3, 1986. On March 3, 1987, the Waltkes executed a renewal note to Mitchell Bank referencing this loan with a repayment date of June 1, 1987. Mitchell Bank contends that a balance of $37,000 plus interest of $75,041.43 remains on this loan as secured under the Mortgage as a past debt.[3]

---

[3] In summary, Mitchell Bank calculates the Waltkes' unpaid past debts secured by the May 7, 1987 Mortgage as follows:

*Schanke Involvement*

¶ 10. On March 10, 1986, the Waltkes issued a promissory note to Schanke for $20,000. On April 9, 1987, Schanke sued the Waltkes on the note and on May 19, 1987, obtained judgment for over $20,000. Schanke executed on the judgment; the Waltkes' Genesee property was later seized and sold at a sheriff's sale on June 13, 1988. Schanke was the only bidder and purchased the Waltkes' non-homestead, mortgaged Genesee property for $20,000.

¶ 11. On October 6, 1992, Schanke obtained judgments against Marilyn Waltke in the amounts of $2,530.13 and $333.00 and docketed judgment liens against the Genesee property. On May 2, 1994, a title report was issued for the Genesee property listing Schanke and Marilyn Waltke as the latest grantees and referencing several outstanding tax liens against the Waltkes.

¶ 12. On March 7, 2000, Schanke filed this declaratory judgment action against Mitchell Bank to have the May 7, 1987 Mortgage invalidated and to clear the Mitchell Bank lien from the title to the Genesee property.

*The Waltkes' Bankruptcy*

¶ 13. On December 21, 1988, the Waltkes filed for Chapter 11 bankruptcy listing Mitchell Bank as a

| Note/Guarantee | Principal | Interest | Total |
|---|---|---|---|
| Alfred Waltke | $37,000.00 | $ 75,041.43 | $112,041.43 |
| Gary Butler | $25,000.00 | $ 49,739.67 | $ 74,739.67 |
| Miracle Shield | $ 5,000.00 | $ 0.00 | $ 5,000.00 |
| TOTAL DUE | $67,000.00 | $124,781.10 | $191,781.10 |

secured creditor in the amount of $50,000. The bankruptcy petition did not characterize the debt or reference the collateral secured. The petition does not list the thirty-four acre Genesee property as an asset. Mitchell Bank is listed on the creditor roster with an unknown outstanding balance owed, and under "Creditors Holding Security," Schanke is listed as a co-owner of property in Waukesha county in foreclosure. The bankruptcy record does not disclose a claim by Mitchell Bank in the bankruptcy proceeding. On March 28, 1989, the Waltkes received their bankruptcy discharge.

*The Mitchell Bank Write Off*

¶ 14. On November 29, 1988, Mitchell Bank board chairman Howard Schneider sent a memo to the Federal Deposit Insurance Corporation characterizing the following loan guarantees as "legal bad debts": Alfred Waltke, $50,000; Miracle Shield, $12,000; Universal Graphics, $12,000;[4] and Gary Butler, $25,000. Schneider's letter references the printing press as security for the Miracle Shield guarantee but does not mention the May 7, 1987 Mortgage as a security interest.

¶ 15. Mitchell Bank took no other action on the Mortgage until Schanke filed his action to clear title on the Genesee property. On August 9, 2000, Mitchell Bank filed its action for foreclosure on the Genesee property.

---

[4] A fourth financial transaction involved the Waltkes' guarantee of a $50,000 loan from Mitchell Bank to Universal Graphics on November 3, 1986. Mitchell Bank concedes that the Universal Graphics obligation has been satisfied.

## ISSUE

¶ 16. Mitchell Bank contends that the Mortgage is a valid security instrument and supports foreclosure on the Genesee property as security for the Waltkes' antecedent unpaid obligations. Schanke responds that the Mortgage is invalid because Mitchell Bank cannot produce the specific Note referenced in the Mortgage. We agree that the Mortgage is invalid.

## STANDARD OF REVIEW

█

¶ 17. We must separate the factual findings of the trial court from the conclusions of law and apply the appropriate standard of review to each. *See DOR v. Exxon Corp.*, 90 Wis. 2d 700, 713, 281 N.W.2d 94 (1979), *aff'd,* 447 U.S. 207 (1980). Findings of fact shall not be set aside unless clearly erroneous. WIS. STAT. § 805.17(2) (1999–2000). We review questions of law de novo, benefiting from the trial court's analysis. *Lomax v. Fiedler*, 204 Wis. 2d 196, 206, 554 N.W.2d 841 (Ct. App. 1996).

¶ 18. The trial court found that the May 7, 1987 Mortgage referenced a specific Note in the amount of $50,000 dated May 7, 1987, that no future debt was secured by the Mortgage and that it is plausible the Note was destroyed by a flood at the bank. The trial court found that the Mortgage was only intended to secure the $50,000 Note and because Mitchell Bank could not produce the Note, "the Mortgage be released as a matter of law as there is no consideration granted for the Mortgage of May 7th, 1987 . . . without a concurrent note . . . ." The trial court further found that the other obligations which Mitchell Bank claims the Mortgage was to secure were "never intended by the

parties to secure the Mortgage and the Mortgage itself references again only the specific Note dated May 7th, 1987" and that "because [Mitchell] Bank is unable to show any Note dated May 7th, 1987 this Mortgage ceases to exist as a matter of law . . . ."

¶ 19. The trial court dismissed Mitchell Bank's reliance on the Mortgage dragnet clause by concluding that the *Badger State Agri-Credit v. Lubahn*, 122 Wis. 2d 718, 365 N.W.2d 616 (Ct. App. 1985), general proposition of validity is "generally disfavored and [is] in fact to be carefully scrutinized by the court." The trial court again referred to the above earlier findings and that "the specific [Mortgage] language that prevails here again is the language to the reference of a May 7th, 1987 Note" and that the dragnet clause in the Mortgage does not apply "as this Mortgage was never intended by the parties to secure other obligations as evidenced by the plain reading in the four corners of the Complaint itself."

¶ 20. Mitchell Bank concedes that the May 7, 1987 Note referenced in the Mortgage cannot be produced. However, it contends that the Mortgage itself has been produced in evidence and the Mortgage contains a valid "dragnet" provision that extends the mortgage security interest to debts other than that referenced in the missing Note. The Mortgage recites consideration in the amount of $50,000 "evidenced by [the Waltkes'] notes(s) [sic] dated May 7, 1987" and provides further that the

> Mortgage is also given to secure any extensions(s) [sic] and/or renewal(s), of the note(s) and the payment of any and all other sums advanced hereunder or secured by this Mortgage as further described and permitted in Paragraph 4 below, for any reason, and to secure performance of the covenants, conditions and agree-

ments contained herein or in any note or other evidence of any of the Obligations (as hereinafter defined) secured by this Mortgage.

¶ 21. Paragraph four, the Mortgage dragnet provision, incorporates "without limitation, all of the debts, notes, guaranties, obligations and liabilities of whatever nature or amount (and any extension, renewals or modifications thereof) arising out of credit or other financial accommodation previously granted." Mitchell Bank introduced ledger evidence of ascertainable, underlying prior debts existing antecedent to the Mortgage and Note dated May 7, 1987, that remain unpaid by the Waltkes and that fall under the dragnet clause.

¶ 22. We construe there to be an issue with two separate parts of the Mortgage: the $50,000 Note and the dragnet clause of paragraph four that extends the mortgage security interest to debts other than the one referenced in the missing Note. We will address each segment of the Mortgage separately to demonstrate why the Mortgage is invalid.

*Missing Note*

¶ 23. The determination as to whether the underlying debt of the mortgage is sufficiently identifiable is one of fact which shall not be set aside on appeal unless clearly erroneous. *Id.* at 723. The burden of specifically proving the indebtedness secured by the mortgage is upon the mortgagee. *Id.* at 723–24.

¶ 24. Mitchell Bank concedes that it cannot produce the May 7, 1987 Note. The Mortgage does not set forth any of the conditions of the Note, the rate of interest, the amount and time of payments, or the maturity date. Mitchell Bank's one witness, Mitchell

Bank chief financial officer James Croke, testified that he knows nothing personally about any of the events of this Mortgage. The individuals who handled the transaction are no longer with the bank. The notary who witnessed the Mortgage is no longer with the bank. Croke testified that the Waltkes did not get $50,000 on May 7, 1987. He further testified that he does not know if there was a Note or not but that it was possible that if there was a Note, it was destroyed in a flood.

¶ 25. A note evidences indebtedness; a mortgage simply secures this indebtedness. *Bank of Sun Prairie v. Marshall Dev. Co.*, 2001 WI App 64, ¶ 12, 242 Wis. 2d 355, 626 N.W.2d 319, *review denied,* 2001 WI 88, 246 Wis. 2d 167, 630 N.W.2d 220 (Wis. May 8, 2001) (No. 00–1076); *see also Witter v. Neeves,* 78 Wis. 547, 548, 47 N.W. 938 (1891). While Mitchell Bank has evidence of security for the debt, it has not produced any evidence of the actual debt. There can be no mortgage without a debt. *Bank of Sun Prairie,* 2001 WI App 64 at ¶ 18; *see also Doyon & Rayne Lumber Co. v. Nichols,* 196 Wis. 387, 390, 220 N.W. 181 (1928).

¶ 26. The Mortgage secured the Note; in order to obtain a judgment of foreclosure, Mitchell Bank was required to prove the terms of the Note and the default of those terms. *See Frick v. Howard,* 23 Wis. 2d 86, 96, 126 N.W.2d 619 (1964). It has not.

*Dragnet Clause*

¶ 27. Whether a mortgage containing a dragnet clause is enforceable is a question of law which we decide independently. *Badger State,* 122 Wis. 2d at 723. Dragnet clauses are looked upon with disfavor and are

carefully scrutinized. *Id.* If the amount of debt is stated in the mortgage *and* is identifiable from the mortgage documents, then the mortgage is enforceable. *Id.* at 721. The obvious corollary to this axiom is that if the amount of debt is not both stated in the mortgage and identifiable from the mortgage documents, the mortgage is not enforceable.

¶ 28. Here, the amount of past due debt is not stated anywhere in the Mortgage. Nor is the amount of debt identifiable from the Mortgage documents because there are no documents attached to the Mortgage. Thus, the dragnet clause of the Mortgage is unenforceable.[5]

## CONCLUSION

¶ 29. The Mortgage is invalid because the Note cannot be produced and Mitchell Bank cannot establish the indebtedness secured by the Mortgage. Furthermore, the dragnet clause of the Mortgage is invalid because the amount of debt is not stated in the Mortgage and is not identifiable from the Mortgage documents. The Mortgage is therefore unenforceable. We affirm the judgment and order dismissing Mitchell Bank's foreclosure complaint and the judgment in favor of Schanke invalidating Mitchell Bank's mortgage lien on the Genesee property.

*By the Court.*—Judgments and order affirmed.

---

[5] Schanke makes other arguments against the validity of the Mortgage, including the doctrine of laches and estoppel and allegations of a fraudulent transfer. Because we have already determined that the Mortgage is invalid, we need not address these arguments.