James H. Daughtry d/b/a La Quinta Mortgage,
James H. Daughtry, as Attorney in Fact for Steve
Welty and Associates, Roberta Fleming, Donald J.
Troy, Sharron Troy, Dolores E. Thompson, Geraldine B. Smith, Harold Armburst, Chang Family
Trust of 1995, Robert J. McDonald, Susan J.
McDonald, Gurley 1980 Family Trust, Patricia
A. Maietta, Santo LaFerrara, Carole R. Otto,
William Hall, Phyllis Hall and Holmes Family
Trust, Plaintiffs-Appellants,

v.

MPC Systems, Inc., MPC Development LLC, 400
Main Street Partners LLC, James C. Harlan III
and Ian R. Waddell, Defendants-Co-Appellants,

Brack Thermal System, Inc., United Building
Centers, United States Fire Protection/Wisconsin,
Inc., Daniel W. Parmenter, State of Wisconsin
Department of Workforce Development, and
Doerflinger Condominium Association, Inc.,
Defendants,

City of La Crosse, Defendant-Respondent.

Court of Appeals

*No. 02–2424. Submitted on briefs March 10, 2003.—Decided
March 18, 2004.*

2004 WI App 70

(Also reported in 679 N.W.2d 808.)

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Thomas M. Pyper* and *Jeanne M. Armstrong* of *Whyte Hirschboeck Dudek S.C.*, Madison.

On behalf of the defendants-co-appellants, the cause was submitted on the briefs of *William G. Skemp* of *William Skemp Law Firm, S.C.*, La Crosse, and *Phillip B. Greer* of Newport Beach, California.

On behalf of the defendant-respondent, the cause was submitted on the briefs of *Patrick J. Houlihan*, City Attorney, and *Pamela A. Captain*, Assistant City Attorney, for the City of La Crosse.

Before Deininger, P.J., Vergeront and Lundsten, JJ.

¶ 1. LUNDSTEN, J. A developer, MPC, entered into a contract with the City of La Crosse to purchase and renovate a building. MPC acquired financing from La Quinta.[1] When MPC failed to complete renovations on time, the City sought to exercise a contract clause giving it the right to buy back the building. MPC

---

[1] We employ the same shorthand terms used by the parties when referring to the appellants and co-appellants. We collectively refer to the appellants as "La Quinta," even though La Quinta assigned its interest in the mortgage to other named plaintiffs-appellants. Similarly, we collectively refer to the co-appellants as "MPC."

disputed the City's allegation that MPC was responsible for delays. During this same time period, MPC also stopped making mortgage payments.

¶ 2. La Quinta eventually brought a foreclosure action against MPC and named the City as a codefendant. The City counterclaimed against La Quinta and cross-claimed against MPC. The circuit court granted summary judgment in favor of the City and against both MPC and La Quinta. As to MPC, the court declared that MPC had breached the contract and the City had the right to exercise the buy-back clause. As to La Quinta, the court declared that the City's ownership interest upon buy-back is superior to the interest created by the mortgage held by La Quinta.

¶ 3. On appeal, MPC argues that the circuit court erred in granting summary judgment to the City. MPC makes four arguments: (1) the circuit court erroneously refused to acknowledge the answer MPC filed responding to the City's cross-claim; (2) the circuit court erroneously entered default judgment against MPC; (3) the circuit court compounded its default judgment error by relying on the default judgment as an admission by MPC that it breached its contract with the City; and (4) the circuit court erroneously failed to defer to the separate lawsuit initiated by the City in which MPC is litigating the breach issue. We reject all of MPC's arguments, but nonetheless reverse the summary judgment in favor of the City because of our resolution of arguments made by La Quinta.

¶ 4. La Quinta argues that the circuit court erred in granting summary judgment in favor of the City and against La Quinta. La Quinta contends there is a factual dispute concerning whether MPC breached its contract with the City that precludes summary judgment. On this topic, we address the following ques-

266

tions: (1) Did La Quinta waive its argument that MPC breached the contract? (2) Does La Quinta have a right to litigate the breach issue? (3) Did the circuit court err when it prohibited La Quinta from relying on the affidavits of an MPC officer? (4) Does one of the MPC officer's affidavits create a material factual dispute? We conclude that La Quinta did not waive the breach argument, and we answer the remaining questions in the affirmative. Therefore, we agree with La Quinta that a material factual dispute precludes summary judgment in favor of the City.

¶ 5. La Quinta also contends that it is entitled to summary judgment against the City. For purposes of these arguments, La Quinta assumes that MPC breached the contract, thereby entitling the City to buy back the building. La Quinta asserts that its mortgage interest is superior to the City's buy-back right for two reasons. First, the mortgage La Quinta holds is a "purchase money mortgage" and, as such, it is superior to the City's buy-back right. Second, La Quinta argues that its mortgage is a "construction lien" within the meaning of the contract between MPC and the City which specifies that the City's right to buy back the building is subject to construction liens. We agree with the circuit court that these arguments lack merit, and we decline to grant summary judgment in favor of La Quinta.

¶ 6. Therefore, we reverse summary judgment against both MPC and La Quinta and remand with directions.

## Background

¶ 7. The City of La Crosse owned a historic retail building called the Doerflinger Building. MPC offered to buy and extensively renovate the building. Negotia-

267

tions ensued, resulting in a property sales contract between MPC and the City dated March 12, 1998. The contract contained a reversion clause, giving the City the right to buy back the Doerflinger Building for the purchase price, $50,000, if MPC failed to "substantially complete" the renovation by September 30, 1999. The contract language on this topic is as follows:

> If [MPC] does not . . . substantially complete [renovation] within the time periods provided herein, this Agreement, at the option of CITY, shall be null and void and the CITY, upon payment of the purchase price of Fifty Thousand Dollars ($50,000.00) . . . shall have the option to re-acquire the property subject to construction or mechanical liens existing at that time.

The contract also required that MPC provide proof that it "has the financing to complete the renovation, remodeling, landscaping and other costs in connection with the project."

¶ 8. MPC acquired financing from La Quinta. La Quinta agreed to provide MPC with financing for both the purchase price and renovations in exchange for a first mortgage security interest. The first mortgage was executed on April 6, 1998. The City determined that the financing agreement was satisfactory, and a quitclaim deed was recorded on August 14, 1998. The deed states that "conveyance is subject to [the contract which provides], among other things, that the City has an option to reacquire the above-described property should the renovation of the property not be done in accordance with said Contract." The first mortgage was recorded on August 28, 1998.

¶ 9. Approximately two years later, on April 20, 2000, the City issued a "stop work notice" to MPC. Thereafter, La Quinta stopped funding loan draws for the project, and MPC stopped making loan payments to La Quinta.

¶ 10. MPC failed to meet the timetable set forth in the contract. On May 2, 2001, the City filed a lawsuit against MPC, separate from the one before us, alleging that MPC breached the contract. That case, captioned *City of La Crosse v. Frontier Insurance Co., et al.*, Case No. 01–CV-256, is being held in abeyance pending this appeal.

¶ 11. On January 28, 2002, La Quinta commenced the lawsuit that is the subject of this appeal. La Quinta named as defendants MPC and several other parties, including the City, with potential claims against the Doerflinger Building. La Quinta sought foreclosure, alleging that MPC had defaulted on its loan from La Quinta. La Quinta asserted that the Doerflinger Building was owned in fee simple by MPC and that any claim or lien alleged by the City was "subordinate and junior" to the lien held by La Quinta.

¶ 12. On March 12, 2002, the City sought to exercise its right to buy back the Doerflinger Building by asserting that MPC had breached the contract and declaring the Contract for Conveyance null and void.[2]

---

[2] Throughout its briefing, and in pleadings submitted to the circuit court, the City speaks in terms of being declared the "owner" of the Doerflinger Building. However, the City does not explain how it can be the owner before it pays MPC the purchase price, offset by any losses sustained by the City in connection with the Desmond lease or other losses described in the contract. The City does not direct our attention to any place in the record indicating the actual buy-back amount or whether it has paid that amount. Further, the circuit court's order

¶ 13. On April 9, 2002, the City counterclaimed against La Quinta and cross-claimed against MPC. In both of these claims, the City asserted that MPC had breached the contract by failing to "substantially complete" renovation on time. The City asked the circuit court for an order declaring that the City had the right to buy back the Doerflinger Building, free and clear of any mortgage interest held by La Quinta. The City further asked the court to declare that its ownership, upon repurchase, was not encumbered by the mortgage interest held by La Quinta.

¶ 14. MPC did not file a timely answer to La Quinta's foreclosure action and did not file a timely answer to the City's cross-claim. In addition, a co-owner of and negotiator for MPC, Conrad Seymour, failed to attend a scheduled deposition, at which Seymour was to be deposed by the City and La Quinta. The City had subpoenaed Seymour to attend. The deposition was rescheduled at least once, but Seymour continued to fail to cooperate.

¶ 15. The City moved for sanctions against MPC, asking the court to prohibit MPC or "any other party" from using information supplied by Seymour for purposes of deciding summary judgment motions. The City also moved for default judgment on its cross-claim against MPC based on MPC's failure to file an answer. Finally, the City moved for summary judgment against La Quinta, asserting that the City's reversionary interest was superior to La Quinta's interest.

¶ 16. MPC did not respond to the City's default judgment motion.

---

declares that the "City is entitled to take back the property." Accordingly, we speak in terms of the City's right to buy back the building.

¶ 17. La Quinta objected to any order that would prevent it from presenting evidence from Seymour. La Quinta opposed summary judgment against it, relying in part on the Seymour affidavits it had submitted. La Quinta also moved for summary judgment against MPC and the City, asserting that the undisputed facts showed that MPC had not breached the contract and, therefore, MPC still owned the building, but also alleging that MPC had defaulted on its loan from La Quinta. La Quinta asserted that it possessed a lien with priority over all other claims on the property.

¶ 18. The circuit court granted the City's request that no party be permitted to rely on evidence from Seymour.

¶ 19. With respect to MPC, the circuit court treated the City's motion for default judgment as a motion for summary judgment and granted the motion. The circuit court concluded that by failing to file a timely response to the City's cross-claim, and by failing to file a responsive pleading or counter-affidavits to the City's summary judgment motion, MPC admitted the City's allegation that MPC had breached the contract. The circuit court declared that the City has the right to buy back and own the Doerflinger Building "free and clear" of "any interests" of MPC.

¶ 20. With respect to La Quinta, the circuit court granted summary judgment in favor of the City. Among other reasons given for awarding summary judgment in favor of the City, the circuit court explained that La Quinta did not have standing to argue that MPC did not breach its contract with the City and that La Quinta was bound by admissions flowing from MPC's failure to file responsive pleadings to the City's cross-claim. The

circuit court declared that the City has the right to buy back and own the Doerflinger Building "free and clear" of La Quinta's mortgage.

¶ 21. With respect to the dispute between La Quinta and MPC, the circuit court granted summary judgment in favor of La Quinta, declaring that MPC owed La Quinta $1,346,780.45 pursuant to the mortgage note.

## Discussion

### I. Standard of Review

¶ 22. We review summary judgment *de novo,* applying the same method as the trial court. *Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). Summary judgment is appropriate when there is no material factual dispute and the moving party is entitled to judgment as a matter of law. *Germanotta v. National Indem. Co.,* 119 Wis. 2d 293, 296, 349 N.W.2d 733 (Ct. App. 1984). Summary judgment methodology is well established and need not be repeated here. *See, e.g., Lambrecht v. Estate of Kaczmarczyk,* 2001 WI 25, ¶¶ 20–24, 241 Wis. 2d 804, 623 N.W.2d 751.

### II. The City's Summary Judgment Motion Against MPC

¶ 23. The circuit court granted summary judgment in favor of the City, declaring that the City has the right to buy back and own the Doerflinger Building. MPC asserts this is error for four reasons: (1) the circuit court erroneously refused to acknowledge the answer MPC filed responding to the City's cross-claim;

(2) the circuit court erroneously entered default judgment against MPC; (3) the circuit court compounded its default judgment error by relying on the default judgment as an admission by MPC that it breached its contract with the City; and (4) the circuit court erroneously failed to defer to the separate lawsuit initiated by the City in which MPC is litigating the breach issue. We reject all of MPC's arguments, but nonetheless reverse the summary judgment in favor of the City.

¶ 24. If this action involved only MPC and the City, we would have no trouble affirming the circuit court's judgment in favor of the City. However, as explained in the part of this opinion dealing with La Quinta's appeal, we conclude that La Quinta has the right to litigate whether MPC breached the contract with the City and a factual dispute precludes summary judgment. Because it is nonsensical under the particular facts of this case to let stand a judgment against MPC declaring the City to be the owner of the Doerflinger Building based on MPC's breach, and at the same time permit La Quinta to proceed with its argument that MPC owns the building because MPC did not breach the contract, we reverse that part of the summary judgment declaring that the City has the right to buy back the Doerflinger Building. Instead, we conclude that the appropriate sanction against MPC in this lawsuit, under the unusual facts of this case, is to preclude MPC from litigating whether it breached the contract with the City. On remand, the circuit court should determine whether MPC should be dismissed from this lawsuit or whether it should continue as a

party, despite our holding that MPC may not be an advocate with respect to whether it breached its contract with the City.[3]

¶ 25. In the following subsections, we explain why MPC's arguments on appeal have no merit.

### A. MPC's Late Answer

■

¶ 26. MPC argues that the circuit court erroneously refused to "acknowledge" the answer MPC filed responding to the City's cross-claim. The City explains that MPC's answer was untimely and that MPC did not request an extension of time or even attempt to provide factual assertions establishing excusable neglect. MPC ignores the fact that its answer was late and makes no attempt to rebut the City's assertion that MPC failed to request an extension or establish excusable neglect. The circuit court properly concluded that MPC had not filed a timely answer.

### B. Default Judgment

¶ 27. MPC argues that the circuit court erroneously entered default judgment against MPC. Relying on WIS. STAT. § 806.02 and *Pollack v. Calimag*, 157 Wis. 2d 222, 235, 458 N.W.2d 591 (Ct. App. 1990), MPC asserts: "a counter claimant cannot obtain a default judgment against a defendant." However, as the City points out, no default judgment was entered; the circuit

---

[3] This means MPC may not move to dismiss the City's cross-claim under WIS. STAT. § 802.06(2)(a)10 (1999–2000), a topic discussed later in this section. All further references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

court denied the City's motion for default judgment and instead treated the motion as one for summary judgment. Accordingly, the circuit court could not have violated any rule against entering default judgment.

## C. Use of MPC's Failure as an Admission

¶ 28. MPC asserts that the circuit court compounded its default judgment error by relying on the default judgment as an admission by MPC that it breached its contract with the City. MPC reasons that, because the circuit court's "finding" of a breach was based on an erroneous default judgment, there still exist "questions of material fact that preclude granting a motion for summary judgment."

¶ 29. In the previous subsection, we explained that the circuit court did not enter default judgment against MPC. Thus, MPC's argument has a faulty starting point. In its reply brief, MPC implicitly acknowledges that default judgment was not entered, and raises a different issue: "what can the trial court do if it finds that there is not a responsive pleading to a counter claim."[4] MPC contends the answer is nothing. MPC reasons that without a judgment "there is no finding of fact which could give rise to a determination of any breach." We fail to understand this argument. Summary judgment is not based on fact finding. If MPC means to argue that its failure to file an answer or other responsive pleading cannot be considered an admission for purposes of summary judgment, it has not made or developed that argument.

---

[4] The circuit court treated the City's motion for default judgment as a motion for summary judgment, and we do the same. MPC has not argued that the City must lose because it filed the wrong type of motion.

¶ 30. The City has identified the correct issue and has addressed it. The question is this: In the absence of an answer to a cross-claim and in the absence of any other responsive pleadings, may a court deem facts alleged in a cross-claim and submissions filed in connection with a summary judgment motion admitted for purposes of summary judgment? The City contends the answer is yes, and we agree. A party must file an answer to a cross-claim. WIS. STAT. § 802.01(1). In addition, averments are deemed admitted when not denied. *See* WIS. STAT. § 802.02(4); *see also Mitchell Bank v. Schanke*, 2004 WI 13, ¶ 34, 268 Wis. 2d 571, 676 N.W.2d 849, *rev'g* 2002 WI App 225, 257 Wis..2d 723, 652 N.W.2d 636. In this case, MPC failed to file an answer to the City's cross-claim and failed to deny averments made in submissions by the City. Thus, for purposes of summary judgment, MPC has failed to dispute any fact alleged by the City.

## D. The Separate Lawsuit

■

¶ 31. Finally, MPC asserts that the circuit court erroneously ignored the separate lawsuit filed by the City against MPC, *City of La Crosse v. Frontier Insurance Co., et al.*, Case No. 01–CV-256. MPC argues that the circuit court violated WIS. STAT. § 802.06(2)(a)10 by failing to dismiss the City's cross-claim because, MPC asserts, the separate lawsuit "deals with the exact same issues and the exact same parties." MPC states that, in the separate lawsuit, "the City of La Crosse is claiming that MPC breached its contract," which is the same claim the City is making in its cross-claim. The City responds that this issue has been waived because MPC did not move for dismissal on this basis before the

circuit court. MPC replies that its attorney advised the circuit court that the breach issue was pending in the separate lawsuit and, therefore, the circuit court was obligated under § 802.06(2)(a)10 to dismiss the City's cross-claim.

¶ 32. We have reviewed the portion of the transcript where MPC contends its trial counsel made the separate lawsuit argument. That exchange cannot reasonably be read as advising the circuit court that the City's cross-claim should be dismissed because of the other lawsuit.[5] We deem the issue waived.

### III. Summary Judgment Issues Between the City and La Quinta

¶ 33. In the following subsections, we deal with two topics. First, whether there is a material factual dispute regarding the City's right to buy back the Doerflinger Building that precludes summary judgment in favor of the City. Second, whether, even if the City has a right to buy back the building, La Quinta is entitled to summary judgment because its mortgage interest is superior to the City's buy-back interest.

---

[5] The full exchange was as follows:

[Counsel for MPC]: I think – I think it does enlist the breach. I don't think it in any manner deals with a finding of liability, and if in fact the reality is that Mr. Daughtry indicates that there's monies due that haven't been paid and that's the basis for taking it back, then the city is in its foreclosure action not asking for a determination of the breach, but is simply asking that it have priority, then all those issues I think still remain the purview of Judge Rosborough [presiding in the separate lawsuit], and based upon that –

THE COURT: They might be pending in front of Judge Rosborough, but they are also alleged in the claim here and they're alleged to have been breached.

### A. *Whether Summary Judgment was Properly Granted Against La Quinta*

¶ 34. La Quinta first argues that averments by Conrad Seymour of MPC show a dispute as to whether MPC breached the contract and, consequently, whether the City has the contractual right to buy back the Doerflinger Building. On this topic, we address the following questions: (1) Did La Quinta waive its argument that MPC breached the contract? (2) Does La Quinta have a right to litigate the breach issue? (3) Did the circuit court err when it prohibited La Quinta from relying on the Seymour affidavits? (4) Does one of the Seymour affidavits create a material factual dispute? We conclude that La Quinta did not waive its breach argument, and answer the remaining questions in the affirmative. Therefore, we agree with La Quinta that a material factual dispute precludes summary judgment in favor of the City.

### 1. *Waiver*

██

¶ 35. Without using the word "waiver," the City argues that La Quinta waived its right to assert a factual dispute regarding whether MPC breached the contract. The City argues that, regardless whether La Quinta has the right to litigate the breach issue and regardless whether the Seymour affidavits are considered, La Quinta admitted there is no factual dispute precluding summary judgment. The City points to La Quinta's assertion before the circuit court that factual disputes relating to construction delays and breach are not material to La Quinta's summary judgment motion. The City quotes the italicized language below, taken from a La Quinta memorandum supporting its request for summary judgment:

The City's reacquisition right ripened only on specified breaches of contract by MPC. *While there are significant disputes between MPC and the City over who is responsible for construction delays and why the Doerflinger Project is still not completed, those factual disputes are not material to La Quinta's motion.* For purposes of this motion, La Quinta assumes that the City can show that it is entitled to reacquire the property, but only subject to the full extent of La Quinta's construction mortgage lien existing "at [this] time." That amount is $1,356,600.42 as of June 2, 2002. *See* Daughtry Aff., ¶ 17. If, however, the Court were to disagree, the significant factual disputes on the question of whether the City can exercise its reacquisition rights precludes summary judgment in favor of the City.

The City's reliance on the italicized language is divorced from context. La Quinta argued that any factual dispute regarding the breach did not preclude summary judgment *in favor of La Quinta.* La Quinta went on, both in the above-quoted language and elsewhere, to assert that there are factual disputes relating to the breach that preclude summary judgment in favor of the City. We reject the City's waiver argument.

*2. La Quinta's Right to Argue that MPC Did Not Breach the Contract Between MPC and the City*

¶ 36. The circuit court concluded that La Quinta lacked standing to litigate whether MPC breached the contract and, therefore, lacked standing to litigate whether the City was the lawful owner of the Doerflinger Building. The circuit court's lengthy decision is not amenable to quick summarization, but it is fair to say that part of the circuit court's reasoning was as follows: having decided that the City was entitled to

summary judgment against MPC based on MPC's failure to respond to the City's factual assertion that MPC breached the contract, La Quinta should not be permitted to continue and litigate the very same issue in the context of its dispute with the City. The circuit court was understandably concerned with the prospect of inconsistent holdings regarding whether the City owned the Doerflinger Building. We have the same concern. However, the question remains whether there is a reason why La Quinta may not fully litigate its dispute with the City, including the dispute regarding who breached the contract. We agree with La Quinta that there is no such reason.

¶ 37. The key to understanding our analysis is understanding that we are *not* addressing whether La Quinta has standing to argue that it has some sort of right under the contract between MPC and the City. Rather, the breach issue simply forms a part of the factual backdrop for the dispute between La Quinta and the City because it is pertinent to whether the City or La Quinta has a superior interest in the Doerflinger Building. If MPC breached the agreement and the City has the right to buy back the building, that situation forms the necessary factual underpinning for the City's counter-claim contention that its ownership interest in the Doerflinger Building will be superior to any interest La Quinta may have as a result of the mortgage agreement. Conversely, if MPC did not breach the agreement and the City is not the building owner, La Quinta's asserted interest is superior to the City's.[6]

---

[6] In a case of this complexity, this statement warrants qualification. The City has not explained in its brief why it would have an interest in the Doerflinger Building superior to La Quinta's if the City does not have the right to buy back the

¶ 38. The most helpful case identified by the parties is *Precision Erecting, Inc. v. M & I Marshall & Ilsley Bank*, 224 Wis. 2d 288, 592 N.W.2d 5 (Ct. App. 1998). In order to understand why *Precision Erecting* supports La Quinta's position here, it is necessary to describe in detail the pertinent parts of that decision.

¶ 39. In *Precision Erecting*, a Waukesha company named AFW Foundry contracted with Antonic & Associates to coordinate improving an AFW business property. *Id.* at 293. While performing on this contract, Antonic purchased a piece of equipment from a Nambe Mills, Inc. Antonic made a $7,000 downpayment on the $70,000 price, and Nambe delivered the equipment. Nambe received no further payment. Nambe was not the only subcontractor or supplier on the project not getting paid. A subcontractor named Precision Erecting sued AFW for unpaid bills and AFW responded with a third-party complaint against Antonic, Nambe, and twenty-one other third-party defendants. *Id.* at 293–94. AFW's third-party complaint is the subject of the appeal in *Precision Erecting*.

¶ 40. Precision Erecting and the other third-party subcontractors and suppliers alleged that AFW owed them a total of $365,000. AFW claimed that Antonic was not its agent, but rather a general contractor and, therefore, AFW's liability was limited to the amount it owed Antonic under AFW's contract with Antonic. This amount, AFW argued, was as little as $85,000 because

---

building because of MPC's breach. Our statement in the text is based on the absence of any indication in the appellate briefs that there is an alternative basis for the City asserting that it has an interest in the Doerflinger Building superior to La Quinta's interest. However, this litigation will continue, and we do not mean to preclude the City from proffering other theories, provided they are consistent with this opinion.

some subcontractors and suppliers had already agreed to accept a pro rata portion of the amount owed. *Id.* at 294. Antonic filed an answer alleging it was a project manager, not a general contractor. Similarly, Nambe filed an answer alleging Antonic was an agent, not a general contractor. AFW moved for summary judgment against all of the third-party defendants, requesting a judgment establishing its liability to these various defendants in the amount of about $86,000. In a turnabout, Antonic submitted a letter stating it did not oppose AFW's summary judgment motion. Nambe did not respond at all. *Id.* The circuit court granted summary judgment, declaring that Antonic was a general contractor and directing that all subcontractors and suppliers be paid out of an $85,957 trust funded by AFW. The circuit court subsequently allocated $11,340 of this trust to Nambe, an amount representing 18% of Nambe's $63,000 claim. Nambe appealed the judgment. *Id.* at 294–95.

¶ 41. On appeal, Nambe effectively asked that it be allowed to litigate the contractual relationship between AFW and Antonic because of Nambe's own interest in holding AFW liable for the balance due to Nambe. This court described the issue as "whether the summary judgment to AFW against Antonic precludes Nambe from arguing that Antonic was an agent of AFW rather than a general contractor." *Id.* at 300. We determined that issue preclusion barred any further litigation regarding the relationship between AFW and Antonic. *Id.* at 304–09. An important part of our issue preclusion analysis hinged on the fact that Nambe could have, but failed to "assert[] itself at the summary judgment stage if it felt material facts regarding Antonic's status were in dispute." *Id.* at 301. We explained: "The very fact that a summary judgment

motion was made alerted Nambe that someone was alleging that there were no facts in dispute. If [Nambe] did not agree, it should have come forward at that time." *Id.* at 309. We further explained:

> We observe it to be self-evident that a summary judgment motion by its very nature alleges certain facts to be undisputed. If a litigant who is not the subject of the motion for summary judgment nonetheless has reason to dispute the facts supporting the motion, it is that litigant's duty to appear and object to the motion. If not, and summary judgment is granted, the facts underlying that judgment are binding on all other parties to the suit as a matter of issue preclusion. That is what the trial court held and we agree.

*Id.* at 292–93.

¶ 42.　In essence, La Quinta is in the same position Nambe would have been in had Nambe asserted its right to weigh in on the nature of the contractual relationship between AFW and Antonic. In *Precision Erecting*, Nambe's rights with respect to AFW turned on the construction of a contract to which Nambe was not a party. If, under the AFW/Antonic contract, Antonic was AFW's agent, then AFW would have been liable to Nambe for the $63,000 outstanding balance. We opined that, regardless whether Antonic chose to contest AFW's assertion that Antonic was a general contractor, Nambe had "every right to appear and object to the summary judgment motion." *Id.* at 306. That is, Nambe had the right to participate and argue that Antonic was not a general contractor under the AFW/Antonic contract and, consequently, that AFW was liable to Nambe for the full outstanding balance.

¶ 43.　It would be inconsistent to tell Nambe in *Precision Erecting* that it passed up its chance to litigate the contractual relationship between AFW and

Antonic, but now tell La Quinta that it has no right to litigate whether MPC breached MPC's contract with the City. Just as Nambe had a right to litigate a contract issue between AFW and Antonic because of the consequences that flowed to Nambe, regardless whether Antonic disputed AFW's position, La Quinta has the right to litigate the breach issue between MPC and the City, regardless whether MPC pursued the issue. Not only does La Quinta have the right to litigate the breach issue, under *Precision Erecting* La Quinta would have faced issue preclusion had it not pursued the issue.[7]

### 3. Whether the Circuit Court Erred in Refusing to Consider the Seymour Affidavits Submitted by La Quinta

██

¶ 44. Conrad Seymour is a co-owner of MPC and was involved in negotiations with the City regarding the purchase and renovation of the Doerflinger Building. Following commencement of this litigation, Seymour failed to appear for deposition by the City. Based on this failure, the City asked the circuit court to prohibit MPC or "any other party" from using information supplied by Seymour for purposes of deciding summary judgment motions. La Quinta, recognizing that the City's request affected La Quinta's ability to submit evidence from Seymour, opposed the request. The circuit court granted the City's request and made clear that its ruling applied to La Quinta.

---

[7] It may be that a circuit court has the authority to deny a third party, such as La Quinta, the right to litigate an issue if the court guarantees the third party that it will not face issue preclusion. However, we do not address that issue because that did not happen here.

¶ 45. The parties dispute whether WIS. STAT. § 804.12(4) provides authority for prohibiting La Quinta from presenting affidavits from Seymour. Section 804.12(4) provides, in relevant part:

> If a party or an officer, director, or managing agent of a party or a person designated under s. 804.05(2)(e) or 804.06(1) to testify on behalf of a party fails (a) to appear before the officer who is to take the party's deposition, after being served with a proper notice, . . . the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others, it may take any action authorized under [§ 804.12(2)(a)1, 2, and 3].

Under § 804.12(2)(a)2, authorized sanctions include:

> An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting the disobedient party from introducing designated matters in evidence . . . .

¶ 46. La Quinta argues that WIS. STAT. § 804.12(4) authorizes sanctions only against a disobedient party, that is, a party that fails to cooperate with discovery, and La Quinta points out that it did not fail to cooperate with discovery. The City does not argue that § 804.12(4) authorizes sanctions against a non-disobedient party. Instead, the City argues that § 804.12(4) authorizes the exclusion of the Seymour affidavits because Seymour is an officer of MPC and MPC is a party. The City's argument explains why a sanction was properly imposed against MPC, but fails to address why § 804.12(4) provides authority for preventing La Quinta from presenting evidence from Seymour.

¶ 47. We are uncertain, but the City seemingly contends that a circuit court has the inherent authority to exclude evidence proffered by an innocent party if

the source of the evidence failed to cooperate with discovery attempted by another party. The City provides no authority or argument for this position, and we are reluctant to resolve the issue in the absence of adversarial briefing. However, we conclude we need not resolve this legal question because, even assuming a court has the authority to exclude evidence under these circumstances to avoid unfairness, the facts here do not support the exercise of such authority.

¶ 48. When this topic was discussed before the circuit court, counsel for La Quinta noted that La Quinta never tried to stop the City from deposing Seymour. La Quinta's counsel observed that he too had been waiting with the attorneys for the City when Seymour did not show up. La Quinta's counsel suggested that the court defer a ruling on the summary judgment motions to give the City a chance to "take the deposition of Mr. Seymour under an order by the court subject to contempt." The City responded that La Quinta and MPC had been "in bed" together for the last three or four years. The City argued that La Quinta's suggestion that the case be delayed while the City deposed Seymour was "just one more effort on their part to not get this case done."

¶ 49. In rejecting La Quinta's suggestion that it use its contempt power to compel Seymour's attendance at a deposition, the circuit court did not base its decision on any misbehavior or failing by La Quinta. In fact, the court agreed that La Quinta had no apparent control over Seymour. Instead, the court focused its attention on fairness to the City:

> I don't think that allowing a witness to present evidence only on behalf of one side and not subject himself to discovery or herself to discovery is fair, and it may be that [La Quinta] doesn't have control over Mr. Seymour

and that they don't have an exact identity of interests, but in this case it would appear to me that all of the affidavits submitted by Mr. Seymour are in support of the position of [La Quinta], and that he has aligned himself with [La Quinta], and I think that the facts in this case in terms of when those affidavits were prepared and the fact that he didn't appear for the deposition lead me to the conclusion that I should not consider those affidavits in support of [La Quinta's] position at this point in time.

¶ 50. We first note that, on appeal, the City does *not* argue that the sanction imposed against La Quinta was justified because of misbehavior by La Quinta.[8] We are left, then, with the fairness rationale expressed by the circuit court. This rationale is reasonable as far as it goes, but it does not adequately take into account that the remedy imposed prevented La Quinta from litigating an issue it has a right to litigate. The exclusion of this evidence was a "drastic remedy." *See Jenzake v. City of Brookfield*, 108 Wis. 2d 537, 542, 322 N.W.2d 516 (Ct. App. 1982). Rather than first impose this drastic remedy against a non-misbehaving party, the circuit court should have, as suggested by La Quinta's counsel, attempted to use its contempt power to compel Seymour's attendance.[9] The City did not argue below,

---

[8] We stress that our conclusion on this topic might have been different if the City had produced evidence that La Quinta was, to some degree, responsible for Seymour's lack of cooperation and if the City had argued that such misbehavior by La Quinta justified the sanction imposed by the circuit court. However, the City has not directed our attention to such evidence and has not made that argument.

[9] Seymour had been served with a subpoena that informed him that his failure to appear would subject him to possible sanctions, including contempt. Attendance at a deposition "may be compelled by subpoena as provided in s. 805.07." Wis. Stat.

and does not argue on appeal, that it would have been harmed by the delay associated with such an attempt. *See id.* at 545 (when concealment of testimony unfairly affects a party's ability to try a case, the harmed party should demonstrate why a continuance is not an appropriate remedy).

¶ 51. We conclude that the circuit court deprived a non-misbehaving party of the ability to present evidence without sufficiently exploring alternatives that would have ameliorated unfairness to the City. Accordingly, the Seymour affidavits are properly considered for purposes of determining whether the City is entitled to summary judgment.

### 4. Whether One of the Seymour Affidavits Creates a Material Factual Dispute

█

¶ 52. La Quinta argues that the City is not entitled to summary judgment because one of the Seymour affidavits raises a material factual dispute as to whether the City improperly prevented MPC from performing on the contract. We agree.[10]

---

§ 804.05(1); *see also* Wis. Stat. § 804.05(3)(b)4. The statutory subpoena form in Wis. Stat. § 805.07 contains the following language: "Failure to appear may result in punishment for contempt which may include monetary penalties, imprisonment and other sanctions." *See also Evans v. Luebke*, 2003 WI App 207, ¶ 17, 267 Wis. 2d 596, 671 N.W.2d 304 ("Contempt power is recognized as an 'inherent' judicial power, that is, one that does not necessarily derive from legislative mandate and which inheres in the definition of a court.").

[10] Before the circuit court, La Quinta also argued that, even ignoring the Seymour affidavit, the breach issue was put into dispute by affidavits of several other persons. La Quinta has abandoned that argument on appeal.

¶ 53. One of the Seymour affidavits avers that the City interfered with MPC's ability to perform on the contract by improperly issuing "stop work" notices. In particular, Seymour's affidavit avers that the City issued a stop work notice based on the wrong set of plans. Seymour specifies the outdated plans used and the revised plans that should have been used. Seymour averred that he "personally pointed out the error . . . to the Board of Public Works in May 1999 by providing documentation of the change in plans and bond reduction." Seymour averred that the La Crosse Board of Public Works agreed that an error had occurred, but would not lift the "Stop Work Notice." Seymour averred that MPC lost eight months because of this, which caused MPC to fail to complete renovation of the building by the contract deadline. Thus, Seymour avers in plain terms that the City, by knowingly issuing an improper stop work notice, interfered with MPC's ability to comply with the contract.

¶ 54. The City provides only one response to La Quinta's argument that Seymour's averments raise a factual dispute as to whether the City was responsible for MPC's failure. The City points out that an "unavoidable delays" clause was *deleted* from the agreement between MPC and the City. The deleted clause reads:

> In the event of unavoidable delays beyond the control of [MPC] and CITY, the date for commencement and/or date for substantial completion of the improvements shall be correspondingly set back by the same number of days involved in the period of unavoidable delays beyond the control of [MPC] or CITY.

The City asserts that, because this clause was deleted from the agreement, "[i]t does not matter who or what caused the delays" and, therefore, MPC is responsible even if the City improperly hindered MPC. La Quinta

argues that deletion of the unavoidable delays clause is beside the point because when two parties contract they impliedly agree not to hinder the performance of the other. We agree with La Quinta.

¶ 55. In Wisconsin, "[i]f one person enters into a contract with another, there is an implied promise by each that each person will do nothing to hinder or obstruct performance by the other." Wis JI—Civil 3060; *see also Ekstrom v. State*, 45 Wis. 2d 218, 222, 172 N.W.2d 660 (1969) (" '[T]here is an implied undertaking in every contract on the part of each party that he will not intentionally and purposely do anything to prevent the other party from carrying out his part of the agreement, or do anything . . . .' " (quoting 17 Am. Jur. 2d, *Contracts* § 256, at 653, 654)); *Gessler v. Erwin Co.*, 182 Wis. 315, 338, 193 N.W. 363 (1924) (" 'Where a party stipulates that another shall do a certain thing, he thereby impliedly promises that he will himself do nothing which will hinder or obstruct that other in doing that thing . . . .' " (quoting 2 Williston, Contracts, at 1307, 1308)).

¶ 56. Because Seymour's affidavit raises a factual issue as to whether the City improperly interfered with MPC's ability to substantially complete its work by the contract due date, and because we reject the City's only counterargument on this topic, we conclude that a material factual dispute precludes summary judgment in favor of the City. If, on remand, further discovery produces additional evidence on this issue, the City may attempt to show there is no material factual dispute regarding whether MPC breached the contract.[11]

---

[11] La Quinta makes, but does not adequately develop, another argument regarding a distinct factual dispute. La

### B. Whether Summary Judgment in Favor of La Quinta is Required Because the Mortgage Gives La Quinta a Right Superior to the City's Interest, Even if MPC Breached the Contract

*1. Whether a Purchase Money Mortgage Has Priority Over the Reversionary Interest Created by the Contract*

¶ 57. La Quinta argues that, even if it is assumed that MPC breached the contract, thereby entitling the City to buy back the Doerflinger building, this court

Quinta asserts that it received assurances that, under the Contract for Conveyance, La Quinta's mortgage interest would supersede the City's right to buy back the Doerflinger Building. La Quinta points out that in one of Seymour's affidavits he asserts he informed the City Attorney that no one would lend money to MPC if the City's right to buy back the Doerflinger Building could result in the lender losing the building as security for the loan. Seymour averred that, in response to his warning, the City added the "subject to construction and mechanical liens existing at the time" language to the contract and informed Seymour that the term "construction and mechanical liens" included the eventual mortgage holder's interest. Therefore, according to La Quinta, there is a factual dispute regarding whether MPC and the City intended that the term "construction lien" covered the La Quinta mortgage. Missing from La Quinta's argument, however, is any reason why this extrinsic evidence of the intent of the contracting parties is admissible. In general, a party must demonstrate a contract is ambiguous before introducing extrinsic evidence of the parties' intent. *See Kernz v. J.L. French Corp.*, 2003 WI App 140, ¶ 10, 266 Wis. 2d 124, 667 N.W.2d 751, *review denied,* 2003 WI 140, 266 Wis. 2d 62, 671 N.W.2d 849 (Oct. 27, 2003) (No. 02–1291). Elsewhere in this decision we explain that La Quinta has failed to demonstrate that the term "construction lien" is ambiguous. However, nothing in our opinion precludes La Quinta from pursuing this issue again on remand.

should nonetheless grant summary judgment to La Quinta because its mortgage agreement with MPC gives La Quinta an interest in the property superior to the City's right to buy back the property. La Quinta asserts this is true because the mortgage was a "purchase money mortgage" and, as such, it takes precedence over any other claim to the property. The parties dispute whether the mortgage is a "purchase money mortgage," but we need not resolve that dispute. We agree with the circuit court and the City that, even if the mortgage agreement between La Quinta and MPC is properly characterized as a "purchase money mortgage," it does not give La Quinta an interest superior to the City's right to buy back the property.

¶ 58. Our analysis here largely tracks that of the circuit court, and we begin with the same proposition assumed by that court: absent an exception set forth in the law, a party may not convey an interest greater than the interest the party possesses. This general proposition is exemplified in the property law context by *Gilchrist v. Foxen*, 95 Wis. 428, 70 N.W. 585 (1897).

¶ 59. In *Gilchrist*, a property owner conditionally gifted the property to her daughter. *Id.* at 429. The deed recited that the property was transferred subject to the condition that the mother be supported in "good manner" during her lifetime. *Id.* The daughter and her husband acquired two mortgage loans on the property. *Id.* After the daughter died and the husband absconded, the mother re-entered the property. *Id.* at 437–38. A mortgagee sought to foreclose on the property. The court rejected foreclosure, finding that the condition had not been met and, therefore, the mother lawfully regained title. *Id.* at 438–40. While addressing the rights of the mortgagee, the *Gilchrist* court

explained: "[E]very person acquiring any right, title, or interest in the premises, from, through, or under the daughter, or her husband, or both, by deed, mortgage, or otherwise, necessarily took and received the same subject to those provisions contained in the deed." *Id.* at 435. That is, the *Gilchrist* court concluded that an interest in the property acquired by the mortgagee from the owner could not be greater than the interest the owner acquired through the deed. *See also Minneapolis Threshing Mach. Co. v. Hanson,* 112 N.W. 217, 218 (Minn. 1907) (a mortgagee who obtains a mortgage from an owner, and subsequently seeks to obtain property by foreclosure, may only acquire the property rights the owner possessed under the deed).[12]

¶ 60. Here, MPC purchased conditional ownership of the Doerflinger Building. Unlike a typical sales contract, MPC acquired the Doerflinger Building subject to the City's right to buy back the building if MPC failed to "substantially complete" renovations by September 30, 1999. Similarly, the deed stated that the conveyance was subject to this reversion clause in the contract.

¶ 61. La Quinta does not take issue with the general proposition that a party may not convey an interest greater than the interest the party possesses.

---

[12] La Quinta argues that cases such as *Gilchrist* and *Minneapolis Threshing* are inapposite because they involve an absolute right to reacquire the property upon the occurrence of certain conditions, not, as here, a right to reacquire with an express limitation. However, even assuming La Quinta has accurately identified a distinction, La Quinta never explains why the distinction matters. We need not address undeveloped arguments. *See Truttschel v. Martin,* 208 Wis. 2d 361, 369, 560 N.W.2d 315 (Ct. App. 1997) ("[W]e do not decide issues that are not adequately developed by the parties in their briefs.").

Instead, La Quinta asserts that an exception to this general rule is present here because La Quinta's mortgage agreement with MPC is a *purchase money mortgage*. La Quinta relies on *Northern State Bank v. Toal*, 69 Wis. 2d 50, 230 N.W.2d 153 (1975), for the proposition that a purchase money mortgage is superior to any claim. In its reply brief, La Quinta asserts that the court in *Northern State Bank* held that where a purchase money mortgage is executed pursuant to an agreement as part of a continuous transaction, the mortgage "takes precedence over *any other claim* or lien attaching to the property." *See id.* at 55 (emphasis supplied by La Quinta). However, *Northern State Bank* does not stand for the sweeping proposition asserted by La Quinta.

¶ 62. The "any other claim" language from *Northern State Bank* that La Quinta relies on is not a part of the holding in that case; rather, it is part of a description of the circuit court's reasoning. *Id.* at 55. Moreover, even if the supreme court in *Northern State Bank* had indicated adoption of the "any other claim" language, La Quinta would still have two problems. First, such language would be dicta because the court in *Northern State Bank* was not asked to decide whether every type of claim or interest is trumped by a purchase money mortgage.[13] Second, there is no indication that the *Northern State Bank* court contemplated that it was addressing the type of interest retained by the City of La Crosse in this case.

¶ 63. In *Northern State Bank*, a creditor held a judgment against a man named Toal in the amount of

[13] *See State v. Sartin*, 200 Wis. 2d 47, 60 n.7, 546 N.W.2d 449 (1996) ("Dicta is a statement or language expressed in a court's opinion which extends beyond the facts in the case and is broader than necessary and not essential to the determination of the issues before it.").

approximately $30,000. *Id.* at 51. After that judgment had been obtained, Toal applied for a mortgage loan to purchase a home. In his application, Toal listed his $30,000 judgment as a debt. *Id.* at 51–52. Based on the advice of counsel that a purchase money mortgage would have preference over the prior judgment, the lender accepted Toal's application and took a mortgage on the home. *Id.* at 52. When Toal subsequently defaulted on the mortgage payments, the mortgagee/lender and the judgment holder disputed whether the purchase money mortgage took priority over the prior judgment. *Id.* While ruling in favor of the mortgagee/lender, the supreme court relied on authority stating that a purchase money mortgage has priority over earlier judgments and judgment liens against the mortgagor. *Id.* at 55–56. Neither *Northern State Bank*, nor any of the authority cited in that opinion, addresses the sort of pre-existing property interest held by the City in this case.

¶ 64. La Quinta has failed to provide authority for its assertion that a purchase money mortgage has priority over the type of reversionary interest held by the City. We agree with the circuit court's conclusion that, in the absence of a provision in the contract between MPC and the City making the City's reversionary right subordinate to the type of mortgage held by La Quinta, the City's reversionary right, and its lawful exercise of that right, extinguishes La Quinta's interest in the Doerflinger Building.

*2. Whether La Quinta's Mortgage Interest Is a "Construction Lien" Within the Meaning of the Contract*

¶ 65. Here, La Quinta once again assumes for argument sake that MPC breached the contract, thereby entitling the City to buy back the Doerflinger Building. In this argument, La Quinta asserts that its

mortgage is a "construction lien" within the meaning of the MPC/City contract and, therefore, La Quinta's mortgage interest is superior to the City's interest because the contract specifies that the City's right to buy back the Doerflinger Building is subject to construction liens.

¶ 66. La Quinta argues that the term "construction . . . liens" in the contract is ambiguous and that one reasonable interpretation of the term includes La Quinta's mortgage on the Doerflinger Building.[14] "Contractual language is ambiguous only when it is 'reasonably or fairly susceptible of more than one construction.' " *Town of Neenah Sanitary Dist. No. 2 v. City of Neenah*, 2002 WI App 155, ¶ 9, 256 Wis. 2d 296, 647 N.W.2d 913 (quoting *Borchardt v. Wilk*, 156 Wis. 2d 420, 427, 456 N.W.2d 653 (Ct. App. 1990)). "The interpretation of a written contract, including the determination of whether its terms are ambiguous, is a legal matter that we decide independently." *Town of Neenah*, 256 Wis. 2d 296, ¶ 9.

¶ 67. La Quinta cites various sources for the proposition that a mortgage creates a "lien." *See, e.g., Mutual Fed. Sav. & Loan Ass'n v. Wisconsin Wire Works*, 58 Wis. 2d 99, 104, 205 N.W.2d 762 (1973) ("[T]he interest of the mortgagee is that of a lien holder."). However, these sources miss the mark because the contract term at issue here is not the general term

---

[14] La Quinta also argues that the circuit court erroneously concluded that the term "construction . . . liens" in the contract unambiguously has the same meaning ascribed the term in WIS. STAT. § 779.01(3). We need not address that argument because La Quinta never demonstrates that a reasonable reading of "construction liens" includes the interest held by a mortgagee.

"lien," but the more specific term "construction lien." La Quinta has not provided any support for its argument that the term "construction lien" encompasses an interest created by a mortgage. To be clear, the ambiguity requirement is not met by a showing that the meaning of a contract term is uncertain because the term is undefined and has no single generally accepted meaning. In the context of this case, there needed to be a showing that a reasonable person could read the term in the contract as encompassing a mortgage interest. La Quinta failed to do that.

¶ 68. In contrast, many sources treat mortgages and construction liens as distinct from each other. *See, e.g., Wozniak v. Wozniak*, 121 Wis. 2d 330, 337, 359 N.W.2d 147 (1984) (discussing the differences between mortgages, judgment liens, and construction liens); *R. Fredrick Redi-Mix, Inc. v. Thomson*, 96 Wis. 2d 715, 723, 292 N.W.2d 648 (1980) ("A construction lien is a remedy created by statute to insure payment to contractors, subcontractors, tradesmen, laborers and materialmen who have furnished labor or materials in good faith for the improvement of another's property."); *Mortgage Assocs., Inc. v. Monona Shores, Inc.*, 47 Wis. 2d 171, 186–87, 177 N.W.2d 340 (1970) (construction liens have priority over unrecorded mortgages); *Marine Bank of Appleton v. Hietpas, Inc.*, 149 Wis. 2d 587, 589, 439 N.W.2d 604 (Ct. App. 1989) (affirming the circuit court's decision that a construction lien was subordinate to a mortgage); *see also* Wis. Stat. § 779.01(3).[15]

---

[15] The parties debate the definition of "construction lien" contained in the sixth edition of Black's Law Dictionary. We note that the current seventh edition of Black's has a different definition, and that neither the definition in the sixth edition nor the definition in the seventh edition supports La Quinta's argument here.

¶ 69. Accordingly, although we use different reasoning than the circuit court, we agree with its conclusion that the term "construction lien" in the contract unambiguously excludes La Quinta's mortgage interest.

## *Conclusion*

¶ 70. Although we reject each of MPC's arguments and would, apart from La Quinta's dispute with the City, affirm summary judgment against MPC, we nonetheless reverse that part of the summary judgment declaring that the City has the right to buy back the Doerflinger Building. We conclude that the appropriate sanction against MPC is to preclude MPC from litigating whether it breached the contract with the City. On remand, the circuit court should determine whether MPC should be dismissed from this lawsuit or whether MPC should continue as a party, despite our holding that MPC may not be an advocate with respect to whether it breached its contract with the City. MPC has not appealed that part of the circuit court's order granting summary judgment in favor of La Quinta against MPC. Accordingly, we do not address that part of the order. Regarding the circuit court's separate order dated August 23, 2002, we affirm the order insofar as it sanctions and imposes costs on MPC. That order, however, may not be enforced against La Quinta.

¶ 71. Further, we agree with La Quinta that a material factual dispute concerning whether MPC breached its contract precludes summary judgment in favor of the City. However, we reject La Quinta's argument that its mortgage interest is superior to the City's interest even if MPC breached the contract and the City has the right to buy back the Doerflinger Building. Thus, we deny summary judgment in favor of La

Quinta on that basis. We also reverse that portion of the summary judgment order discharging the lis pendens, no. 1301353, filed on January 28, 2002, and the amended lis pendens, no. 1308283, filed on April 12, 2002.

¶ 72. Our resolution of these issues means we must also reverse the order directing MPC and La Quinta to pay the City costs. A new order for costs may be appropriate depending on the results of additional proceedings.

¶ 73. Accordingly, we remand to the circuit court for further proceedings consistent with this opinion.

*By the Court.*—Judgments and order reversed and cause remanded with directions.